Syllabus.

BENJAMIN W. GRIFFITH, ET AL. v. VICKSBURG WATER WORKS
COMPANY.

[40 South. Rep., 1011.]

1. STATE AND FEDERAL COURTS. *Conflict of jurisdiction. Injunction.*

It is improper for a state court to issue an injunction touching a
subject matter involved in a suit pending in a federal court of
competent jurisdiction.

2. ACTION BY MUNICIPALITY. *Bar to action by citizens as such.*

A municipal corporation represents its citizens in litigation in re-
spect to matters of general interest as to which all citizens and
taxpayers have a common and similar interest, and hence, where
a city is a party to a litigation in a federal court of competent
jurisdiction, the filing of a bill in a state court by citizens of the
city, involving the same matter, is improper.

3. WATERS. *Public supply. Ordinance fixing maximum rate.*

Where a water company accepts an ordinance by which a maximum
rate for water furnished to a city and its inhabitants is fixed,
rates fixed by the company not in excess of the maximum are
binding on consumers.

4. INJUNCTION. *Construction of order.*

A fiat running, "You are directed to issue an injunction, addressed
to defendant, . . . waterworks company, requiring it to re-
frain from cutting off the water or water connections between its
water plant in the city of . . . and the houses of the com-
plainants named in the foregoing bill until the amount owing by
said complainants respectively to said waterworks company shall
be ascertained and determined by the court and a reasonable
opportunity given them to pay the same," was not one against
discrimination in water rates.

5. SAME. *Dissolution. Grounds.*

By virtue of an ordinance contract defendant water company was
given the right to fix rates for water furnished a city and its in-
habitants within a maximum sum. Subsequently another ordi-
nance was adopted disclaiming liability under the ordinance con-
tract and fixing water rates. While proceedings in a federal court
having jurisdiction were pending, seeking to enjoin the city

from nullifying the ordinance contract on the ground that the later ordinance impaired defendant's contract, an injunction was issued by a state court restraining defendant water company from cutting off water connection with residences of complainants until the amount owing by such complainants to defendant should be ascertained by the court, charging that the rates demanded by the company were in violation of the schedule fixed by the later ordinance, and also charging discrimination against complainants in such rates. It was impossible to ascertain what amounts were owing by complainants, respectively, to defendant until the determination of the question of impairment of contract, which was already within the jurisdiction of the federal court, therefore a dissolution of the injunction was not error because of the allegation of discrimination; the record failing to show that an injunction against discrimination as such was ever issued.

6. APPEAL. *Parties entitled to allege error.    Absence of cross-appeal. Effect.*

Where there was no cross-appeal, the supreme court could not, on request of the appellee, reverse a decree of the chancellor below fixing too small a sum for attorney's fees on the dissolution of an injunction.

FROM the chancery court of Warren county.

HON. WILLIAM P. S. VENTRESS, Chancellor.

Griffith and twenty-eight other persons, the appellants, were complainants in the court below; the Vicksburg Waterworks Company, the appellee, was defendant there. From a decree dissolving an injunction the complainants appealed to the supreme court.

By an amendment to its charter approved March 18, 1886, the city of Vicksburg was authorized "to provide for the erection and maintenance of a system of waterworks to supply said city with water, and to that end to contract with a party or parties who shall build and operate waterworks." Laws 1886, p. 695, ch. 358, § 5. Under this authority an ordinance was enacted by the city on November 18, 1886, which contained the following paragraph: "Section 13. The said Samuel R. Bullock & Co., their associates, successors, or assigns, shall have the right to make all needful rules and regulations governing the

consumption of water, the tapping of pipes and general opera-
tion of the works, and to make such rates and charges for the
use of said water as they may determine, provided that such
rates and charges shall not exceed fifty cents for each thousand
gallons of water." The foregoing ordinance, which was for a
thirty-year term, was accepted by Bullock & Co., and they or-
ganized under the general laws of the state, the Vicksburg Water
Supply Company, to which they assigned the ordinance con-
tract. The supply company erected a plant, and operated the
same until August, 1900, at which time the plant and its fran-
chises were sold under a trust deed for debt, and was purchased
by one Crumpler. The purchaser assigned to the appellee, the
Vicksburg Waterworks Company, which has since been in pos-
session of the property, operating the same, under the ordinance
contract aforesaid. By this ordinance the city agreed, amongst
other things, to take a certain number of public hydrants, and
to pay for the same at a certain rate, during the entire term;
but on November 7, 1900, the city, claiming to proceed under
the act of March 9, 1900 (Laws 1900, p. 180, ch. 138), resolved
that "the mayor and aldermen deny any liability upon any
contract for the use of the waterworks hydrants; that from and
after August, 1900, they will pay reasonable compensation for
the use of said hydrants," etc. This position of the city author-
ities led to the filing of a bill in equity by the water company,
in the United States circuit court, Southern district of Missis-
sippi, Western division, at Vicksburg, in February, 1901,
which is hereinafter called No. 41 (because of its docket num-
ber), in which the company set up its ordinance contract of
1886, claiming that the same was impaired by the act and by
the ordinance of 1900 aforesaid. The federal court dismissed
the bill for want of jurisdiction, but on appeal the United States
supreme court reversed that decision, in April, 1902, (*Vicks-
burg* v. *Vicksburg Waterworks Co.,* 202 U. S., 453; 22 Sup.
Ct., 585, 46 L. Ed. 808), holding that a federal question of
contract impairment was presented, and the cause was re-

manded for further proceedings. Thereupon such further proceedings were had that on May 18, 1904, the United States circuit court rendered a final decree whereby the city was enjoined, in brief, from undertaking to nullify the contract for hydrant service, from erecting a system of its own, and from contaminating the company's water by the discharge of sewerage into its source of supply above the intake. This litigation and the decree did not raise or decide the question of the power of the city to regulate rates for private consumers.

On December 7, 1903, the city adopted an ordinance prohibiting water, light and gas companies from charging damages or other penalty for failure to pay bills when due "until ten days after presenting to the debtors" and affording opportunity on such presentation to pay the same. On March 19, 1904, ch. 182, p. 231, of the laws of that year was approved, whereby cities were authorized to prescribe by ordinance maximum rates of charge for supply of water or lights to private consumers; and on April 20th following (one month before the rendition of the final decree aforesaid) the city adopted two ordinances fixing such maximum charges on water, one fixing the flat rates," and the other fixing the rates by meter. Thereupon, and on the 7th of January, 1905, the water company exhibited against the city another bill in equity in the United States circuit court aforesaid, numbered 79, which set forth the preceding history, also the litigation and decree in cause 41 aforesaid, also the ordinance of December, 1903, and the two ordinances of April, 1904; alleged, in brief, that the enforcement of those ordinances was violative of the company's ordinance contract of 1886, and destructive of its business; and prayed for injunction accordingly. Three weeks later, on January 28th, the appellants, and other citizens of Vicksburg, in behalf of themselves and of all others interested who might see proper to join, filed in the state chancery court the original bill in this cause. This bill set forth the three ordinances of 1903 and 1904; alleged that in 1903 the company had unnecessarily advanced its rates; alleged

the violation of the ordinance of 1903 by demands made for damages without proper presentation of bills; alleged violation of the ordinance fixing meter rates, by charges in excess of the maximum, and in themselves unreasonable, also by minimum charges made of two dollars per month on each meter, even though less than two dollars' worth of water was used, and although such meters had been put in by the customers at their own expense; alleged that the flat rates charged by the company were exorbitant; alleged a discrimination in charges, and that the company was threatening to cut off the water of complainants unless they should submit to such unlawful demands. The prayers were for the enforcement of the city ordinances of 1903 and 1904, and for appropriate injunction against cutting off of water, and against unlawful charges, etc. On the 24th of February, 1905, the United States circuit court rendered an interlocutory decree in cause No. 79, whereby the city was enjoined from enforcing the ordinance of December, 1903, and the two ordinances, fixing rates, of April, 1904, and from interfering in any manner with the company's "contract rights" under the ordinance of 1886, and from interfering with the company's regulations, or with its water rates, or with the flat rates for the citizens. The answer of the water company, filed March 6, 1905, defended all of its rates and charges; alleged that the increase was necessary to pay legitimate expenses and charges, and that they were within the maximum fixed by sec. 13 of the ordinance of 1886 and the general powers conferred by that ordinance; denied the alleged unreasonableness of its rule as to damages on unpaid bills, or any of its regulations; alleged that the ordinances of 1903 and 1904 violated the company's contract made by the ordinance of 1886; pleaded the equity causes in the federal court (causes No. 41 and No. 79), and the decree made as aforesaid on May 18, 1904, in cause 41, as estoppels; also pleaded the pending injunction in cause 79 as a restraint against the prosecution of this cause under penalty of contempt; denied any discriminations, etc. On March 24,

1905, this cause was heard in the court below on a motion to dissolve on the pleadings, exhibits and transcripts showing the history of the litigation as hereinbefore stated. The chancellor dissolved the injunction and decreed damages of $100 on the bond as for attorney's fees.

*Dabney & McCabe,* for appellants.

The city had no authority, under the act of 1886, to make a contract with Samuel R. Bullock & Co., and their successors, etc., which woud deprive it under legislative authority, of power to regulate rates of charges for water and prescribe rules and regulations for the conduct of the company.

That the act of 1886 did not give to the city of Vicksburg authority to make such an irrevocable contract as it is claimed it made, seems too clear to admit of controversy.

The supreme court of the United States has repeatedly held that such power must clearly appear; otherwise, it will not exist.

In *Railroad Commission cases,* 116 U. S., 307, that court said, speaking of this power:

"This power of regulation is a power of government continuing in its nature, and if it can be bargained away at all it can only be by words of positive grant, or something which is in law equivalent. If there is a reasonable doubt it must be resolved in favor of the existence of the power."

This excerpt is taken from that case in the case of *Owensboro v. Owensboro Waterworks Co.,* in 191 U. S., p. 358. The court adds: "This doctrine has been affirmed numbers of times since," and cites *Freeport Water Co.* v. *Freeport,* 180 U. S., 587; *Rogers Park Water Co.* v. *Fergus,* 180 U. S., 624; *Joplin* v. *S. W. Missouri Lt. Co.,* 191 U. S., 43, and other cases. *Norfolk & Western R. R. Co.* v. *Pendleton,* 156 U. S., 667; *Greenville W. W. Co.* v. *Greenville (Miss.),* 7 South. Rep., 409.

Hence, the only question presented here is, does the act of 1886 by "words of positive grant" give the city of Vicksburg,

through its board, the power to take from itself the right in the future to exercise its governmental powers in respect to this company? To read the law is sufficient to give a negative answer without hesitation. It is too clear for argument.

To same effect in strong terms, as excepts from *Pearsal* v. *Gr. No. R. R. Co.,* 161 U. S., 646 (664-5).

If such an irrevocable contract *was* made by the city in its ordinances of November, 1886, the rights and franchises therein granted to Samuel R. Bullock & Co., and their successors, etc., were not assignable, but constituted a personal privilege, like exemption from taxation, which did not pass with the sale of the property, franchise, etc., of the Vicksburg Water Supply Company under the foreclosure sale under the deed of trust, made in 1900, and hence were not acquired by the *Vicksburg Waterworks Company,* the appellee, and cannot now be asserted by it.

Our position under this head is equally as well sustained as our first.

The case of *San Antonio Traction Co.* v. *Allgell,* decided by the supreme court of the United States on December 5, 1905, and reported in the advance sheets of the Lawyers' Co-operative Publishing Co., is directly in point. Indeed, the case is exactly like this one in many of its important features. There was a foreclosure sale and subsequent organization of a new company under a new constitution of the state, as here, and it was held that the contract feature as to rates of charges did not pass. We will place this pamphlet with the record for this court's inspection.

In the case of *St. Louis, etc.,* v. *Gill,* 156 U. S., 649 (latter part of 656) the supreme court of the United States say:

"It has been frequently decided by this court that a special statutory exemption or privilege, such as immunity from taxation or a right to fix and determine rates of fare, does not accompany the property in its transfer to a purchaser, in the absence of express direction to that effect in the statute. *Morgan*

v. *Louisiana,* 93 U. S., 217; *Wilson* v. *Gaines,* 103 U. S., 417; *Chesapeake & Ohio R. Co.* v. *Miller,* 114 U. S., 176."

For additional authorities on the question, see *Norfolk, etc.,* v. *Pendleton,* 156 U. S., 667 (673); *Matthews* v. *Board Corp. Comm.,* 97 Fed. Rep., 400; *Thomas* v. *Jersey R. R.,* 101 U. S., 71; *Gibbs* v. *Consolidated Gas Co.,* 130 U. S., 396; *Covington, etc., Road Co.* v. *Sanford,* 164 U. S., 578; *Bird* v. *United States,* 180 U. S., 359.

There are many other cases to the same effect. We call attention to one more, that of *Railroad Co.* v. *Adams,* 77 Miss., 194 (s.c., 24 South. Rep. 200; 28 South. Rep., 956); also *Railroad Co.* v. *Adams,* 81 Miss., 90 (s.c., 32 South. Rep., 937).

In this case (in 77th) is a most carefully considered opinion by this court; the doctrine is announced that where a company having the right of exemption, is consolidated with another company under a new charter, the privilege is lost. A *fortiori,* would such a privilege be lost where the company's property, franchise, etc., are sold under foreclosure proceedings or otherwise. There is no difference between exemption from taxes and exemption from the right of regulation; both are personal privileges, and it has been repeatedly so held. *St. Louis, etc., R. Co.* v. *Gill,* 156 U. S., 649; *Norfolk, etc., R. Co.* v. *Pendleton,* 156 U. S., 667, and other cases cited above.

If sec. 13 of the contract ordinance of 1886 was valid and irrevocable, and *was* assignable and is now owned and may be enjoyed by the appellee, it fixed the maximum rate of charges for the water company *only where the water is measured by meters,* and the provision in respect to rules and regulations does not authorize the charge of the minimum rate of two dollars, irrespective of the quantity of water consumed; nor deny the city the right to fix flat rate charges.

The constitution of Mississippi of 1890, sec. 178, authorized the amendment or repeal of all charters granted under it. This charter being granted under it in the year 1900, was subject to repeal or amendment, and the act of the legislature of March

19, 1904, authorizing cities to regulate water rates, etc., operated as an amendment of it, if such rights existed under the original contract, and if it acquired the rights by assignment.

We are sustained in this position by the late case of *San Antonio, etc.,* v. *Altgelt,* p. 261, advance sheets, mentioned above, that case being very similar to this one, as to the facts and questions involved. See, also, *Norfolk, etc., R. Co.* v. *Pendleton,* 156 U. S., 673; *In re Chapman,* 166 U. S., 667, and other cases cited.

If we are mistaken in all of the foregoing propositions and contentions, then we say that the consumers were not parties to that contract and are not bound by it. The water company, being a *quasi* public corporation and undertaking to furnish to the public a supply of water, is bound to furnish it to them at reasonable rates, irrespective of any contract it may have made with the city.

Directly in support of this point is the decision of the supreme court of North Carolina in the case of *Griffin* v. *Goldsboro Water Co.,* decided in 1898, 41 L. R. A., 240. This authority fully sustains us on this question, and we insist that no matter what may be decided in any suit between the city of Vicksburg and the waterworks company, or by what court, the consumers of the water and patrons of the company, not being parties, are not affected thereby.

This is a most interesting case, and covers other points arising in the instant case. It holds that the public are entitled to have water at reasonable rates irrespective of any contract between the city and the water company. Hence, we say that this injunction, for that reason, should not have been dissolved, but an opportunity should have been given the appellants to take proof on the question of what rates were reasonable, even though the city was bound by sec. 13 of the ordinance, as a contract.

We especially ask the court to read the opinion in this North Carolina case.

In the case of *Wilkinson* v. *Waterworks Co.,* 78 Miss., 389

(s.c., 28 South. Rep., 877), this court held that the city of Jackson did not represent the patrons of the water company, and that the latter had no right of action under the contract.

*Hudson & Fox,* for appellee.

If sec. 13 of appellee's contract had been written by the supreme court of Mississippi itself, after the announcement made in the case of *Stone* v. *Y. & M. V. R. R. Co.,* it could not have accorded more strictly with its view. Section 13 says:

"And make such rates and charges for the use of water as they may determine, *provided that said rates and charges shall not exceed fifty cents for each thousand gallons of water."*

Section 6 of the Y. & M. V. charter says:

"Be it further enacted that said company shall have and possess the power of fixing from time to time, by its board of directors, the rates at which it will do express and telegraph business, and shall transport other express companies as may apply for transportation over its line, at a just and reasonable rate of compensation, and also the rates at which said company will transport persons or property over its railroad and branches; *provided said last mentioned rates shall not exceed four cents per mile for each passenger nor exceed the following rates of freights: Sixty-five cents per hundred pounds for transporting first and second-class freights one hundred miles or less.* . . . The rate so established from time to time by the said board of directors for transporting persons or property as a railroad company, not exceeding the maximum rate for railroad business as above set out, may be charged and collected by said company."

The court says that it was the legislative intent to vest in appellee the unrestricted right to fix rates, within the limits prescribed by the charter. Unquestionably our own courts have held that any attempt to change, modify, or alter or disturb sec. 13 of the appellee's contract is illegal and an effort to impair it, as well as denounced by the federal courts.

We are referred to *Freeport Waterworks Co.* v. *Freeport,*

180 U. S., 586, by counsel as an authority conferring the
right to regulate appellee.   In 1882, Freeport contracted with
Shelton for water for domestic and manufacturing uses, and
$100 per year for hydrants, and subsequently on the 8th of
August, 1882, he assigned this contract to the water company
with notice to the city.   The city obtained water to the amount
of $5,840 and declined to pay the bill, and by ordinance
alleged that the price charged was unreasonable and oppressive
to citizens and tax payers.   The water company sued, and the
city pleaded this fact and the further fact that by ordinance it
had reduced the price from $100 for hydrants to $50.   The
company demurred to these pleas and it was overruled.   The
water company declining to plead further, *quad recuperet* was
entered and an appeal taken.

The ordinance of 1896 changing the price was passed pur-
suant to, and by authority of, the general incorporation laws of
Illinois, enacted in 1872, this state reserving to the general
assembly the power to prescribe in the government of corpora-
tions, "such regulations and provisions as it may deem advis-
able," and an act approved July 1, 1872, to enable cities and
villages to contract for a supply of water for public use and to
levy and collect the tax to pay for water which *inter alia* pro-
vided that "and to authorize any person or private corporation
to construct and to maintain the same at such rates as may be
fixed by ordinance."   The court, conceiving the words *"such
rates as may be fixed by ordinance,"* coupled with the *previous
reservation* to alter, amend and regulate under the laws of 1872,
it being prior to date of contract made in 1882, were the pivotal
contentions.   But the majority court in this case started off with
the announcement that:

"It is not clear from the opinion of the court (Illinois),
whether it intended to decide that municipal corporations could
not be invested with the power to bind themselves by an irrevo-
cable contract not to regulate water rates.   If so, we cannot
concur in that view.   We have decided to the contrary many

times, and very lately in the *Los Angeles* v. *Los Angeles City Water Co.* (1900), 177 U. S., 558 (see, also, *Walla Walla* v. *Walla Walla· Water Co.,* 172 U. S., 7), where the subject is more extensively discussed and the cases reviewed."

*We respectfully and especially call the court's attention to the fact that there was no law or constitution in this state reserving to the legislature the right to alter, amend, or regulate, etc., when this contract was made in 1886.*

If the Freeport Water Co. contract had been made *prior* to the laws of 1872, would such a decree be in the law books? The questions answers itself—*no!* And we respectfully submit that every case cited by the appellant's attorneys where the courts have allowed the city to regulate the rates, there was a law or constitution in the state reserving the right to alter, amend and regulate *prior* to the date of the contract.

The *Roger Park Waterworks Co.* v. *Fergus,* 180 U. S., p. 624, is dependent upon the *same Illinois statute* and that contract in that case met the same construction necessarily as was adjudicated in the *Freeport case.*

The court will observe while making an investigation of the question, that since the dawn of this rule of law—since conditions became determinable by its rule of construction—it has been met with serious and damaging attacks by minority opinions, notably in the *Freeport case.* These great and masterful legal minds dissecting and analyzing the conditions exercising this rule, thoroughly cognizant of its ancient construction, are contending for the recognized right so long acquiesced in and existent between the contracting parties, and about which neither would have a dispute.

The case of *Los Angeles* v. *Los Angeles Waterworks Co.,* 177 U. S., p. 887, L. ed., negatives the right of the municipality to regulate water rates, and holds that municipalities can irrevocably contract not to regulate or disturb the rates fixed by the contract.

The case of the *Detroit* v. *Detroit Citizens' Railroad Co.,* 184 U. S., p. 593, is a further affirmation of the doctrine that such contracts are made in their proprietary capacity, and when the legal right is conferred to make a contract it incidentally follows that the right obtains to unalterably fix the price for the limitation prescribed, any attempted revocation of which would be violative of art. 10, sec. 1, of the federal constitution, which prevents such efforts and preserves the right of parties.

In order for a municipality to regulate public utilities in their authorized fixed charges for property delivered or services rendered, it is absolutely necessary that some *antecedent legislation should exist reserving that right as against subsequent contracts made, or some reservation should be incorporated in the contract investing the constituted authorities with the power to increase or diminish the price—to do so otherwise is the unauthorized repudiation of the contract and is an attempt to annul a vested right—a property right which is frankly forbidden by the federal constitution.*

The city of Vicksburg made this contract in its proprietary capacity, emanating from a sovereign act and for the benefit of every inhabitant then existent or to be. In matters of public concern where all alike are affected thereby, the sole right lay in the corporation and not in the individual membership constituting it. Where a congregation of people organize themselves into a corporate entity by name, they thereafter act corporately, and all contracts made by it with another and for the breach thereof, "must sue or be sued in its names," otherwise there must be endless confusion as to who are proper parties to actions and whether or not we are compelled to recognize one constituted head. The city of Vicksburg has already recognized its right to bring the like suit and is endeavoring to absolve itself from this contract now for itself and its inhabitants, and on the same grounds now contended for by appellants. If the right exist in either, *the act of one is the exclusion of the other. Therefore, if the city has acted, how can appellant usurp this*

*unwarranted authority?* and a judgment against the city is binding on them. By all adjudication they are not proper parties here. 15 Ency. of Pl. and Pr., 472; *Green* v. *Lake,* 54 Miss., 540; *Wilkerson* v. *Light, Heat & Water Co.,* 78 Miss., 389 (s.c., 28 South. Rep., 877); *The Mayor, Recorder, Aldermen, et al.* v. *The Alexander Canal Co., et al.,* 12 Peters, 1012. Current Law, 890, note 52. *Spring Valley Waterworks* v. *San Francisco,* 124 Fed., 574, is directly in point, and is sound, because they are not the proper parties to bring suit. But if they were, the record of this case discloses the fact that these very questions now pleaded have been decided adversely to the city in the federal court and these appellants, who have a sensible understanding of the scope and purpose of this adverse ruling and decree and the injunction restraining them from any manner interfering, yet they are now prosecuting this suit in violation of that order.

MAYES, Special J., delivered the opinion of the court.*

We approve the action of the chancellor in dissolving the injunction on this record. This conclusion makes it unnecessary to pass upon some of the questions argued by the briefs of counsel.

We do not hold that this injunction should have been dissolved because of *res adjudicata* by the record in federal court cause No. 41. The subject-matter of the controversy was not the same as the subject of this. There it was, in the main, an attempt on the part of the city to disavow, under and by virtue of the act of 1900, its contract with the water supply company for a hydrant service. Here the controversy, in the main, is the right of the city, under the ordinances of 1903 and 1904, to demand damages on unpaid bills under certain conditions, and to regulate the rates for private consumers. Indeed, it is manifest that cause No. 41 could not have involved the

---

*CHIEF JUSTICE WHITFIELD, being akin to one of the parties *recused* himself and EDWARD MAYES, ESQ, a member of the supreme court bar, was appointed and presided in this case in his place.

validity of these later ordinances, since they were not enacted, and the act of 1904, which authorizes some of them, was not passed until about two years after the filing of the bill in that cause. Neither do we hold that the injunction should be dissolved because of any *res adjudicata* in federal court cause No. 79; and this for the reason that when the order of dissolution was made there had been no final judgment in that cause, and the matter was pending in the federal court on a preliminary injunction merely. It is true that we find in this record what purports to be a final decree; but on its face it purports to have been rendered several months after the injunction was dissolved in this cause, and the chancellor's notes of the evidence on which the motion to dissolve was submitted to him make no mention of this decree, as, indeed, it could not. That final decree has no proper place in this record, and it is not considered. We do hold that the injunction was properly dissolved, for the reason that, in and by the filing in the federal court of the bill in cause No. 79, the federal court competently acquired jurisdiction of the very same questions involved in this cause and sought to be litigated herein. That bill was filed, and jurisdiction invested in the federal court, before this suit was begun; and the chancellor, as we think, correctly dissolved the injunction, because, under those conditions, the filing of the bill herein was improper, the matter being already in litigation by the city in another court of competent jurisdiction. *Sharon* v. *Terry* (C. C.), 36 Fed. Rep., 337 (1 L. R. A., 572, notes); *Moran* v. *Sturges,* 154 U. S., 256 (14 Sup. Ct., 1019; 38 L. ed., 981); *Starr* v. *Railway Co.* (C. C.), 110 Fed. Rep., 3, and cases therein cited.

The fact that the bill in this cause was filed by individual citizens and taxpayers, and the bill in cause No. 79 was filed by the city in its corporate capacity, is immaterial. The rule is well settled that a municipal corporation represents its citizens in litigation in respect to matter of general interest as to which

all citizens and taxpayers have a common and similar interest.
That rule is applicable here. ·It would be an intolerable burden
to the courts and to the water company, or to any other *quasi*
public enterprise similarly conditioned, if, notwithstanding their
litigation with the municipality, and a settlement by the courts in
such litigation of the extent of the right of such company, the
whole question could be reopened at any time, by any private
citizen who saw proper so to do, in a controversy over the most
trifling amount. *McIntosh* v. *Pittsburg* (C. C.), 112 Fed.
Rep., 705; *Harmon* v. *Auditor,* 123 Ill., 122 (13 N. E. Rep.,
161; 5 Am. St. Rep., 502); *Elson* v. *Comstock,* 150 Ill., 303
(37 N. E. Rep., 207); *McEntire* v. *Williamson,* 63 Kan., 275
(65 Pac. Rep., 244); *Cannon* v. *Nelson,* 83 Iowa, 242 (48 N.
W. Rep., 1033); *Dicken* v. *Morgan,* 59 Iowa, 157 (13 N. W.
Rep., 57); *Locke* v. *Commonwealth,* 113 Ky., 864 (69 S. W.
Rep., 763); *Tax Payers* v. *Tax Collector,* 49 La. Ann. Code,
1039 (22 South. Rep., 311); *Ashton* v. *City,* 133 N. Y., 187
(30 N. E. Rep., 965; 31 N. E. Rep., 334; 28 Am. St. Rep.,
619); *Stallcup* v. *Tacoma,* 13 Wash., 141 (42 Pac. Rep., 541;
52 Am. St. Rep., 25); *Robbins* v. *Chicago,* 4 Wall., 657 (18
L. ed., 427); Freeman on Judgments, sec. 178. We decline to
follow the decision in *Griffin* v. *Goldsboro Water Company* (N.
C.), 30 S. E. Rep., 319 (41 L. R. A., 240), in holding that
while a water company, which accepts an ordinance by which a
maximum rate is fixed, is bound, and cannot exceed the same
because of its contract, yet such rates are not binding upon con-
sumers, who have a right to litigate against unreasonable
charges. This holding, it seems to us, practically denies the
power of a company, under a contract embodied in its charter
giving the power, so to fix a rate as to bind a private consumer
at all. It opens a never-ending and limitless field of litigation.
It is well settled that the courts cannot fix a rate; and if, pro-
ceeding duly under statutes enacted for that purpose, the munic-
ipality cannot do so, or authorize the company by contract to

do so, and thereby bind the citizens, then there is no authority by which it can be done.

It is not a matter open to serious discussion in this state, since the decision by this court in the case of *Stone* v. *Railroad Company,* 62 Miss., 607 (52 Am. Rep., 193), decided at the April term, 1885, and before the act of 1886 (Laws 1886, p. 694, ch. 358), amending the charter of Vicksburg, was enacted, that a *quasi* public corporation may have a contract right to fix rates within a certain designated maximum, and that the rates so fixed are matter of contract guaranteed by the contract clauses of the United States constitution. In that decision the court was manifestly directing its observations to the binding character of the rates as between the company and the shippers; otherwise, the decision was practically meaningless and without point. The philosophy of the situation is simple. Granting that the company is lawfully invested with authority to fix its rates, then such rate being so fixed by it within the maximum limit allowed by the charter, or allowed by the duly authorized ordinance, is by the courts presumed to be reasonable; and it is not permissible for each individual citizen, in every controversy that may arise, to have that question, once passed upon by the lawfully constituted public authorities charged with power in the premises, reopened and litigated anew. In what we have said we do not intend to suggest any opinion or decision on the question as to whether sec. 13 of the ordinance of 1886, whereby the city undertook to authorize the water company to fix its water rates, was legal and constituted a valid authority to that company or not. That is one of the principal questions which the federal court must determine in the litigation now pending before it. For the reasons stated, its determination is not necessary here; nor would it be proper, in view of the comity which is always scrupulously observed in cases of conflicting jurisdiction or efforts to create a conflict in jurisdiction between the state and the federal courts.

It is claimed by appellants that the chancellor's decree was erroneous for the additional and special reason that the bill charged the water company with discriminating against the complainants in their rates; and it is also said that the denial of such discrimination by the answer is not sufficiently explicit. Without deciding that question, and without undertaking to decide whether this bill could be maintained on that branch of the case alone under the circumstances here presented, we hold that the order of dissolution is not reversible for the reason that the injunction itself, as shown by this record, was not against discrimination. The fiat runs thus: "You are directed to issue an injunction addressed to the defendant, the Vicksburg Waterworks Company, requiring it to refrain from cutting off the water or water connections between its water plant in the city of Vicksburg and the houses or residences of the complainants named in the foregoing bill until the amount owing by said complainants respectively to the said Vicksburg Waterworks Company shall be ascertained and determined by the court, and a reasonable opportunity given them to pay the same." This fiat limited, therefore, the authority of the clerk in the issuance of the injunction writ, and it requires an injunction to issue whereby the defendant shall be restrained from cutting off connections until the amounts owing by the complainants should be ascertained. The gravamen of the bill, as the same is drawn, consisted in the proposition that the rates demanded by the company were in violation of a schedule of rates fixed by the mayor and aldermen. The serious controversy in the case, therefore—at least the controversy presented with the most insistence and greatest elaboration—was the grave constitutional question which was already within the jurisdiction of the federal court; and on this bill as drawn it was obviously impossible to ascertain finally what the amounts owing by the said complainants respectively to the waterworks company were until that constitutional question so within the jurisdiction of the federal court should be fully determined by judicial decree.

This being the case, there is nothing in this record to show any injunction ever issued against discrimination as such. Whatever consideration could be given under the bill to that charge would only be as incidental to the main question of the amounts due; and that main question could not be determined without considering and adjudicating the subject-matter, which was clearly and fully within the jurisdiction of the federal court in the suit already pending. We are not prepared to say that the chancellor erred, therefore, in dissolving the injunction, because of the allegation in the bill that discriminations were made; no injunction, so far as this record shows, having ever issued against discriminations as such.

In the brief of counsel for the appellee it is claimed that we should reverse the decree of the chancellor below in so far as it fixes the attorney's fee on the dissolution of the injunction at $100; but we cannot act on that matter. There is no cross appeal. *Bush* v. *Nance,* 61 Miss., 237. We observe in the record what purports to be an assignment of cross-error filed with the chancery clerk on the 10th of February, 1906. But this document so filed does not meet the requirements of the practice in respect to cross appeals.

*Let the judgment of the court below be affirmed.*