McINNIS, Judge.
This is a suit by Daisy Reliford Smith Murphy on behalf of her minor son, Lorenzo Murphy, as the result of a collision of a motorcycle on which he was riding, with an automobile belonging to James T. McHughes, Sr., and being driven, at the time, by his minor son, James T. Mc-Hughes, Jr., which occurred in the intersection of Allen Street with Anna Street, on December 21, 1950, at about 10:00 o’clock p. m. The demand is for a total of $5,242.-50 for past and future loss of wages, pain and suffering and permanent injury to his right leg.
The original petition was met with an exception of vagueness, which was sustained and an amended petition filed, after which defendant filed an exception of no cause or right of action. This exception was actually leveled at the incapacity of the plaintiff to stand in judgment and to make the demand on behalf of her minor son, because she had alleged that she and John Murphy, father of Lorenzo, were married in 1931 and that they separated in Sep *526 tember 1932 and that the father is presently living in San Francisco, California, but they are not divorced or legally separated. In a written opinion the district judge overruled this exception for the reason that he considered it a dilatory and not a peremptory exception, and that it should have been filed at the same time the plea of vagueness was filed.
Defendant then answered the suit and April 5, 1952 plaintiff filed another amended petition, setting up that he was suffering from arthritis at the site of the fracture in his ankle.
Plaintiff alleges that the accident was caused solely by the negligence of Mc-Plughes, Jr., in failing to keep a proper lookout, failing to keep the Nash Sedan under proper control, failure to bring it to a complete stop before entering Anna Street, attempting to cross Anna Street in the face of closely approaching traffic, driving at an excessive rate of speed in crossing a right-of-way street, and failing to give warning of his approach. All of the allegations of the petition are denied and following acts of negligence are charged against Lorenzo Murphy:
(a) In driving his motorcycle at an excessive rate of speed in the city limits of Shreveport, Louisiana, said rate being sixty (60) miles per hour.
(b) In failing to observe defendant’s automobile which had already pre-empted the intersection.
(c) In failing to apply his brakes in order to stop or slow down and avoid the accident.
(d) In failing to turn or swerve to his right and pass behind defendant’s automobile where there was plenty of room between said automobile and the curb.
In the alternative, it is pleaded that, if McHughes, Jr., was negligent in any way, Lorenzo Murphy was contributorily negligent in the particulars set forth above, and that his contributory negligence bars recovery.
On the issues thus made up the case was tried in the district court and the demands of the plaintiff were rejected. From this judgment a devolutive appeal is prosecuted here.
The facts of this case, as disclosed by the record, are that Allen Street runs generally in a north and south direction and Anna Street generally in an east and west direction. At the time of the accident there was in force an ordinance of the City of Shreveport designating Anna Street as a right-of-way street and fixing the speed limit at not exceeding 35 miles per hour, however, there were no traffic lights at the intersection with Allen Street regulating traffic and no stop signs had been erected on Allen Street to warn motorists to stop before entering the intersection. Young Mc-Hughes left a fraternity meeting where he had been helping get toys together for children not able to buy them. He had three young men in the car with him, but he had already let one out at his home, and at the time of the collision Jerry Bloomer and Glenn McFadden were in the car. Some 290 feet east of the intersection there is an overpass on Anna Street, which inclines about 144 feet to the bottom of the incline and is level for 148 feet.
Lorenzo Murphy testified that he was 15 or 20 feet from the intersection at the time the Nash automobile entered the intersection, going south; that the speed of the motorcycle was about 30 miles an hour, and that he tried to stop and also turned to his left in an effort to avoid the collision; that he was traveling on his right side of the street about four or five feet from the center line; that it was impossible to stop the motorcycle in time to avoid the collision; he marked an X on a plat of the intersection indicating the place the motorcycle stopped after the collision. He marked this plat about the center of the east line of the Allen Street intersection with Anna Street; that the end of the overpass is about 50 feet from the intersection. He says there was some kind of vehicle parked on the north side of Anna Street about 20 feet from the intersection, and that it and some trees obscured his vision of Allen Street.
On cross examination he admitted that he was involved in two accidents before *527 this one; one time he was driving a Jeep and one time he was riding a motorcycle. He also admitted he had paid two fines for reckless driving 'and one fine for speeding at 51 miles an hour.
Robert D. Miller was standing just outside of the southeast intersection of the streets and saw the collision. His testimony was taken by deposition. He estimates the distance to the top of the overpass from the intersection at 250 to1 2.75 feet, and that is where the motorcycle was when he saw it. He estimates its speed at that time at 20 to 25 miles an hour, and says it picked up coming down the overpass, and then leveled off to what he estimated as 25 to 30 miles an hour. He first saw the Nash automobile when it was about entering the intersection at a speed of from five to fifteen miles an hour, and at that time he says the motorcycle was 20 or 30 feet from the intersection. The motorcycle, he says, was from three to five feet south of the center line of Anna Street when it collided with the Nash, and it was thrown backward to within three feet of where he was standing, and Murphy was thrown completely over the Nash. He says that at the time of the collision the Nash was traveling 15 to 25 miles an hour and the motorcycle 25 to 30 miles an hour. There was a panel body truck parked on the northeast side of the intersection on Allen Street. Neither driver gave any horn signal as they approached the intersection.
Young McHughes and the two passengers in the Nash automobile testified that the Nash was slowed practically to a stop near the entrance to the intersection and that at that time they saw a vehicle with one light, which turned out to be the motorcycle, about the top of the overpass, and McHughes said he put the car in second gear and started across the intersection and was going about 15 miles an hour, and as he had crossed the center of the intersection with the front part of his automobile, the motorcycle ran into the left rear door.
After the collision the Nash was moved a short distance south on Allen Street and parked on the right hand side.
McHughes and his two companions estimated the speed of the motorcycle as it approached the intersection at 50 to 60 miles and the speed of the Nash at 5 to 15 miles and no witness placed the speed of the Nash at more than 25 miles.'
From all of the above there can be no doubt that the Nash entered the intersection before the motorcycle did, because, even at the lowest speed of 25 miles estimated as the speed of the motorcycle, it was bound to have entered the intersection after the Nash entered it. We think the speed of the motorcycle was in excess of 30 miles per hour and apparently all Murphy did was turn to his left in an effort to beat the automobile across, which he failed to do.
The fact that Murphy had been convicted before this for speeding and for reckless driving and has been involved in two other wrecks is not evidence that he was at fault in this case.
The fact that Anna Street had been made a right-of-way street by ordinance of the City, without erecting any stop signs, certainly could not be held to be any warning to motorists approaching Anna Street at this intersection, and the record shows that young McHughes was not familiar with that part of the city at that time.
In our opinion, the proximate cause of the collision was the excessive speed of the motorcycle, and the failure of Murphy to see what he could and should have seen, if, in fact, he did not see the automobile. It was there in the intersection and if he had looked he would have seen it.
The lengthy briefs filed by both parties have been read with interest, but inasmuch as we have found the proximate cause of the collision to be negligence on the part of Murphy a lengthy discussion of the cases cited in the briefs would serve no useful purpose.
In a supplemental brief defendant has urged the exception of no cause or right of action leveled at the capacity of the mother to prosecute this suit on behalf of her minor son, and cites Horton v. Western Union Telegraph Company, La.App., *528 200 So. 44. The case-has no application here for the reason that there the father and mother both appeared as plaintiffs, and on exception the mother was dismissed from the proceeding, because the father alone has the right to appear for his minor child, if he is present and not under interdiction.
Art. 221, LSA-C.C. provides, since its amendment by Act No. -41 of 1916, that if the father is under interdiction or is absent the mother is administrator of the estate of her minor children during such interdiction or absence.
We believe the petition sufficiently alleges absence of the father, and therefore the exception was properly overruled.
For the foregoing reasons, the judgment appealed from is affirmed at the cost of plaintiff in both courts.