CULPEPPER, Judge.
This damage suit arises out of an in-tersectional collision in the city of Crowley, Louisiana. From an adverse judgment plaintiff appeals.
The primary issue is whether the street on which defendant’s insured was traveling had the right of way,'where a city ordinance gave it superiority but no stop signs or other traffic control devices had been erected. If defendant did not have the right of way under the ordinance, then the vehicle in which the injured minor was a passenger had preference under the state statute favoring vehicles approaching from the right, LSA-R.S. 32:237. The next issue is whether defendant’s insured was negligent. A third issue is whether any negligence by the driver of the Frey automobile, is imputed, to the injured minor passenger.
The accident occurred at the intersection! of Weston Avenue, running generally north and south, and Fifteenth Street, running generally east and west, in the city of Crowley, Louisiana. The intersection itself, as well as that portion of Fifteenth Street east of the intersection and that portion of Weston Avenue south of the intersection, are paved, but Fifteenth Street west of the intersection and Weston Avenue north of the intersection are graveled. Although there is some contradictory testimony in the record on the question, we believe the evidence shows the two streets sustained about the same amount of vehicular traffic. As stated above, there were no stop signs or other traffic control devices near the intersection, but a city ordinance gave Weston Avenue the right of way.
On December 12,1959, at about 6:00 p. m., during the hours of darkness, defendant’s, insured, Mrs. Alice Foreman, was driving' south on Weston Avenue at a speed of about. 20 miles per hour approaching the intersection. The evidence shows that when she reached a point 100 to 150 feet from the intersection, she saw a third vehicle approaching the intersection on Fifteenth Street from the east, which vehicle stopped at the intersection. When Mrs. Foreman-reached a point about 100 feet from the intersection she also saw, through a row of trees and bushes along the west side of' Weston Avenue, the headlights of the-Frey automobile approaching the intersection on Fifteenth Street from the west. Mrs. Foreman stated that she had traveled' that way many times before and knew Weston Avenue had the right of way by city ordinance. She also knew there were-no stop or yield signs at the intersection facing the Frey vehicle, but she assumed' that it would stop and yield the right of way to her. She stated she could not estimate- *825 the speed at which the Frey vehicle was approaching but she saw nothing about its speed or other actions which caused her to think that it would not yield the right of way. Accordingly, Mrs. Foreman proceeded at her speed of about 20 miles per hour into the intersection. Then she suddenly saw the Frey automobile also entering the intersection. Mrs. Foreman applied her brakes and cut to the left but was unable to avoid a collision. The point of impact was in the southwest quadrant of the intersection. The front of the Frey vehicle struck the right side of the Foreman automobile near the front. After the impact, Mrs. Foreman’s car went a distance of about 115 feet down through a shallow drain and into the yard of a residence on the southeast corner of the intersection. The Frey vehicle stopped very near the point of impact.
Mrs. Rita Frey, driver of the vehicle in which the injured minor was a passenger, was not a resident of Crowley but frequently visited relatives there. She testified that as she approached the intersection on Fifteenth Street from the west, she could not see any automobiles on Weston Avenue north of the intersection because of the 8 to 10 foot high row of trees and bushes along the west side of Weston Avenue. She stated that this was a blind corner and she knew there were no stop signs. She thought it was a “four way stop”. She testified that she stopped, looked to her right and to her left and, on seeing no approaching vehicles, proceeded into the intersection and struck the Foreman vehicle after going about 10 feet. We find no manifest error in the district judge’s finding that despite Mrs. Frey’s testimony to the contrary, the evidence shows she did not stop for the intersection, but proceeded into it at a slow rate of speed.
The record reflects that the claim of the injured minor against the insured driver of the Frey vehicle was settled for the sum of $2,826. On appeal the sole issue as regards liability is whether the defendant’s insured, Mrs. Foreman, was guilty of any negligence constituting a legal cause of the accident.
The district judge found that under the city ordinance Mrs. Foreman had the right of way and was free of negligence. The lower court found further that regardless of the ordinance, Mrs. Foreman had the right of way by virtue of her pre-emption of the intersection.
We must first decide whether Mrs. Foreman actually had the right of way under the city ordinance. This presents the very interesting problem of whether, in the absence of stop signs, a city right of way ordinance prevails over the state statute giving the right of way to the driver approaching from the right. LSA-R.S. 32:237. We find only one Louisiana appellate court opinion, Murphy v. McHughes, 66 So.2d 525 (2nd Cir. La.App.1953) on the issue. There the court held squarely, but without citation of authority, that a city ordinance establishing a right of way street is ineffective where no stop signs are erected to give notice of the ordinance.
The case of Burden v. Capitol Stores, 200 La. 329, 8 So.2d 45 (La.Sup.Ct.1942) cited by counsel for the plaintiff, mentioned the question but found it unnecessary to decide whether the ordinance or the state statute prevailed because the court held that regardless of the right of way, both drivers were negligent.
For a discussion of the general problem of statute versus ordinance, see the case note on Burden v. Capitol Stores, supra, found in 5 La.Law Review 349. This case note addresses itself to the fundamental question of whether a state statute supersedes any conflicting city traffic ordinance, (rather than the necessity of signs to effectuate such an ordinance) and states that the majority of the appellate courts of other states have concluded that the state statute prevails. The author opines that this should be the result under our statute. LSA-R.S. 32:247.
In Blashfield, Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. *826 2, page 330 it is stated that state statutes' giving a right of way are effective, even though no stop signs are erected, but that “in the case on ordinance, however, the rule is otherwise, and a motorist’s failure to stop at an intersection as required by an ordinance is not negligence, in the absence of a stop sign at that point. Under some statutes erection of stop signs is necessary to give the highway preference.” The cited case of Brown Hauling Company v. Newsome, 241 Ala. 300, 2 So.2d 782 involved an Alabama statute which provided that an ordinance granting a right of way was not effective unless stop signs were erected.
We think our legislature has settled the problem in Louisiana by the enactment of LSA-R.S. 32:247 which was in effect at the time of this accident and reads as follows:
“Local authorities, unless expressly authorized by this Chapter, have no authority to unreasonably decrease any speed limitations declared in this Chapter nor to enact any rule or regulation contrary to the provisions of this Chapter; except that municipal authorities or incorporated cities, towns or villages, properly authorized and exercising such authority, shall have power to provide by ordinance for the regulation of traffic by means of traffic officers or signalling devices on any portion of the highway where traffic is heavy or continuous and may prohibit other than one-way traffic upon certain streets and regulate the use of streets by processions and assemblages. They may also, except as herein restricted, regulate the speed of vehicles on their streets, in public parks and other places within the corporate limits and shall erect at all entrances to such places adequate signs giving notice of any such special speed regulations.”
The chapter referred to in the above quoted statute is Chapter 1 of Title 32 dealing with “Traffic Regulation” on the highways of this state. LSA-R.S. 32:1(8) defines “highway” as “every way or place of whatever nature open to the use of the public for the purpose of vehicular travel.” This definition obviously covers all public vehicular thoroughfares both within and without municipalities and regardless of whether they are maintained by the state or local authorities. LSA-R.S. 32:237, in said Chapter 1, establishes the traffic regulation that “[w]hen two vehicles approach or enter an intersection at approximately the same time, the driver approaching from the right shall have the right of way.” It is clear under the provisions of LSA-R.S. 32:247 quoted above that no local authority (which includes municipalities) has authority to enact any ordinance contrary to this rule of the road; except as expressly authorized by said Chapter 1. The only “express authorization” for municipal authorities to enact a traffic regulation contrary to the statutory rule that the vehicle on the right shall have the right of way is the portion of LSA-R.S. 32:247 which provides that they “shall have power to provide by ordinance for the regulation of traffic by means of traffic officers or signalling devices on any portion of the highway where traffic is heavy or continuous * * * ” (Emphasis supplied)
We think the language of this statute is clear that a municipal ordinance establishing a right of way, contrary to the statutory rule of the road, is not valid unless it is made effective “by means of traffic officers or signalling devices”, the obvious purpose of which is to give notice of the ordinance to the public.
Although we think the provisions of LSA-R.S. 32:247 are clear and free from all ambiguity, if it should be considered that there is some doubt as to its true meaning we call in aid the rule of statutory construction that a consideration of the reason and spirit of a statute, or the cause which induced the legislature to enact it, is the most effective way of discovering its true meaning. LSA-C.C. Article 18. The general purpose of the state assuming exclusive control of traffic regulation on every public vehicular thoroughfare in the state is to establish a consistent, general scheme *827 of traffic rules so that the highways can handle the maximum flow of vehicles with the maximum degree of safety. It is reasonable to require that all motorists in the state know the uniform statutory rules of the road, but it would be unreasonable to require that every motorist know the, peculiar traffic regulations of every municipality through which he happened to be driving, unless he is given some reasonable notice of such special regulations. For this reason, the statute restricts the power of municipalities as regards traffic regulation to those matters specifically and expressly set forth in the statute. The statute requires further, that where the municipal traffic regulation is a deviation from the uniform rule of the road, there must be a "signalling device” to give notice thereof. We think it is clear that the term “signalling device” would include stop signs as well as other types of signs and mechanically operated signals. The obvious reason for requiring such signalling devices is to give notice of municipal traffic regulations which deviate from the statewide rules of the road.
 Furthermore, we think a consideration of laws in pari materia supports our statutory construction. The last sentence of LSA-R.S. 32:247 quoted above provides that where municipalities regulate the speed of vehicles on their streets, in public parks, etc. “adequate signs giving notice of any such special speed regulation” must be erected. LSA-R.S. 32:229, authorizing local authorities to define certain speed limitations, requires the posting of notice of such special limitations. These statutes indicate a legislative intent that signs be erected to give reasonable notice of any authorized special local traffic rule.[1]
Our conclusion is that under the provisions of LSA-R.S. 32:247, which was in effect at the time of the occurrence of this accident on December 12, 1959, the ordinance of the city of Crowley giving Weston Avenue the right of way was not in effect because no stop or yield signs or other “signalling devices” had been erected giving notice of the ordinance to persons using the highway. Therefore, the defendant’s insured, Mrs. Foreman, did not have the right of way and had no right to assume that the Frey vehicle would stop at the intersection. Since the two vehicles approached or entered the intersection at approximately the same time, the Frey vehicle approaching from the right had the right of way under LSA-R.S. 32:237(A) and it was the duty of Mrs. Foreman to yield to this right of way. Obviously Mrs. Foreman did not comply with this duty. She did not stop and she did not yield the right of way. Instead she proceeded on into the intersection at a time when it was apparent that such action would result in a collision. *828 There is no evidence whatever that the Frey vehicle was traveling at an unlawful rate of speed or in an unlawful manner so as to forfeit its right of way. The negligence of Mrs. Foreman was a legal cause of the accident for which her insurer is answerable in damages.
We find no merit m defendant’s argument that any negligence on the part of the driver of the Frey vehicle is imputed to the 16 year old minor claimant in these proceedings, or that the minor was guilty of independent negligence. This contention is based on the testimony of the two Frey sisters that they were saying responsively the Rosary of the Catholic church, as they approached and entered the intersection. Defendant contends that the minor is guilty of independent negligence in thus distracting the driver and guilty of imputed negligence in failing to warn the driver to stop at the intersection and in failing to object to the way in which her sister was driving. Ordinarily a guest passenger in an automobile is not answerable for the negligence of his driver and is not required to keep a constant lookout, he being privileged to place reasonable reliance on the driver to exercise the necessary care and caution. Gaines v. Hardware Mutual Casualty Company, 86 So.2d 218. We find no independent or imputed negligence on the part of the minor guest passenger.
Now turning to the question of quantum of damages, we find that defendant’s coverage is limited to the sum of $5,000. Sadie Frey, a 16 year old young lady in the tenth grade of high school was sitting on the front seat next to the driver. The impact of the accident caused Sadie’s head and neck to be thrown through the windshield, causing very severe cutting and scarring about her face and neck, a brain concussion and a badly broken nose. She was still suffering severe headaches at the time of trial and had permanent scars on her face and neck which have caused certain emotional and personality problems. Medical expense already incurred was $329.67. The anticipated expense of two future plastic surgery operations is $1,350. Clearly,, plaintiff is entitled to judgment to the full-amount of defendant’s insurance coverage-of $5,000. We think plaintiff individually should recover the total already incurred medical expense of $329.67 and, as natural tutrix of the minor, the remainder of the $5,000.
For the reasons assigned, the judgment appealed is reversed and set aside. It is* now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Edward Frey, Sr., individually, and against the defendant, Central Mutual Insurance Company, in the sum of $329.67. It is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff as natural tutor and administrator of the estate of his ,minor child,. Sadie Gertrude Frey, and against defendant for the sum of $4,670.33. All costs in the-lower court, as well as the costs of this appeal, are assessed against the defendant.
Reversed and rendered.

. It is of interest that LSA-R.S. 82:41 of the new highway regulatory act of 1962 adopted after the accident in the present case, contains essentially the same provisions as former LSA-R.S. 32:247, but sets out in greater detail the special traffic regulations which municipalities are authorized to enact by ordinance. LSA-R.S. 32:41, subd. A (4) of the 1962 act provides that municipal authorities may adopt ordinances “Designating particular highways as one-way highways, or through highways;”. (Emphasis supplied) Of course, the term “highways” includes every way or place publicly maintained and open to public use for vehicular travel. LSA-R.S. 32:1(57) of the 1962 act defines a “through highway” as one which is given preferential right of way by requiring that traffic from intersecting highways “yield -the right of way to vehicles on such through highway in obedience to either a stop sign or a yield sign, when such signs are erected as provided in this chapter.” LSA-R.S. 32:41, B provides that no municipal ordinance enacted under subdivision (4) of paragraph A (authorizing ordinances to establish through highways or streets by posting stop or yield signs) shall be effective until “signs giving notice of such local traffic regulations are posted upon or at the entrances to the highway or part thereof affected, as may be most appropriate.” Thus a municipality may pass an ordinance establishing one of its highways, other than a state maintained highway, as a through highway, but such an ordinance will not be effective until stop or yield signs are actually erected, giving notice to the public.