AYRES, Judge.
By this action in tort plaintiff seeks to recover damages allegedly sustained as a result of an intersectional automobile collision. Involved were plaintiff’s Chevrolet, driven by Robert C. Canada, a minor, in which plaintiff was a guest passenger, and a Falcon owned by Charlton H. Lyons and operated at the time by J. C. Williams.
Made defendants in addition to Lyons and Williams were Lyons’ insurer, Employers Mutual Liability Insurance Company of Wisconsin, and Sherman Lewis, who plaintiff claimed, in the alternative, was the owner of the Falcon. Named as additional defendants through further pleadings, including third-party proceedings, were Charlie Canada, father of the minor, Robert C. Canada, Canada’s insurer, the American Casualty Company, and plaintiff Small’s insurer, Federal Insurance Company. Excel Insurance Company, collision insurer of plaintiff’s vehicle, intervened and caused to be made defendant its insured, Associates Discount Corporation, lienholder and mortgagee of the Small automobile.
After trial, there was judgment in favor of plaintiff, Rev. David Small, in the sum of $1,215.01, and in favor of the intervenor, Excel Insurance Company, for the sum of $1,196.71, in solido, against Charlie Canada, Federal Insurance Company, J. C. Williams, and Employers Mutual Liability Insurance Company of Wisconsin. Plaintiff’s demands were rejected expressly as against Lyons, Lewis, and the American Casualty Company and impliedly as against Associates Discount Corporation. From the judgment thus rendered and signed, plaintiff, Rev. David Small, and defendants J. C. Williams, Employers Mutual Liability Insurance Company of Wisconsin, and Federal Insurance Company perfected orders of appeal.
No point is made by either of the appellants with respect to the judgment exonerating Lyons, Lewis, American Casualty Company, or Associates Discount Corporation.
The accident occurred about 7:50 p. m. April 4, 1965, at the intersection of Line Avenue and 70th Street in the City of Shreveport, both of which are four-lane thoroughfares. The former, running in a general north-and-south course, intersects and crosses the latter at right angles. The movement of traffic through the intersec *477 tion is governed by an electric signal suspended above its center.
On the occasion of the accident, Robert Canada, 'as the driver of plaintiff’s automobile, occupied the inside southbound traffic lane of Line Avenue and was stopped behind another vehicle in compliance with an unfavorable signal. For the same reason, another vehicle driven by E. J. Williams was stopped facing these cars at the intersection and occupying the inner northbound traffic lane on Line Avenue. . Upon a change of signals, the forward vehicle in plaintiff’s lane proceeded across the intersection. E. J. Williams signaled his intention to make a left turn and proceed westerly on 70th Street. Plaintiff’s driver likewise indicated, by an appropriate signal, his intention to make a left turn and proceed easterly on 70th Street. When plaintiff’s car had reached the outer northbound traffic lane in the course of the left-hand turn, it was struck on its right side by the Lyons vehicle which was proceeding in a northerly direction on Line Avenue.
With respect to the question of liability, the primary issue for consideration is, By whose fault did the collision occur? Resolution of this issue must be determined from the facts established in the record, gauged by applicable legal principles. The statutory rule is that:
“The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard.” LSA-R.S. 32:122.
This court, in Estes v. Hartford Accident & Indemnity Company, 187 So.2d 149, 151 (La.App. 1966 — writs refused), had occasion to point out that this statute:
“ * * * requires the driver of a vehicle within an intersection intending to turn to the left to yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto so as to constitute an immediate hazard. This statute and our related jurisprudence imposes the responsibility upon the motorist desiring to make a left turn to ascertain before attempting to do so that such a maneuver can be made safely and without danger or undue delay to overtaking or oncoming traffic. He must refrain from making a left turn unless the way is dear and, if a collision occurs while he is attempting such a maneuver, the burden rests heavily on him to show that he was free from negligence.”
See, also: Washington Fire & Marine Ins. Co. v. Firemen’s Ins. Co., 232 La. 379, 94 So.2d 295 (1957); Desormeaux v. Continental Insurance Company (La.App.) 153 So.2d 128 (3d Cir. 1963); Doerle v. State (La.App.) 147 So.2d 776 (3d Cir. 1962); Howard v. Fidelity & Casualty Company of New York (La.App.) 179 So.2d 522 (3d Cir. 1965); Fernandez v. Aetna Casualty & Surety Company (La.App.) 180 So.2d 828 (4th Cir.1965).
After reviewing the appropriate jurisprudence in an article entitled “Liability In Left Turn Collisions,” it was observed in 22 La.L.Rev. 474 that:
“The Louisiana courts, viewing the left turn as a highly dangerous maneuver, have placed a high degree of responsibility upon a motorist turning left to ‘see to it’ that his turn is safely made. So onerous is this standard of care that involvement in a collision while turning left gives rise to a presumption of fault. In absence of a showing that the conduct of the non-turning motorist bordered on ‘wilful and wanton’ indifference to the safety of others, the courts tend to minimize negligence on the part of the non-turning driver except where he was attempting to overtake at an intersection. Even then, the doctrine of last clear chance may be available to him.”
*478 • While conceding the correctness of these legal principles, plaintiff takes the position that they are inapplicable to the facts of this case. He contends that the Lyons vehicle, proceeding northerly on Line Avenue in the inner northbound traffic lane, suddenly moved to the outside, or curb, lane of traffic, swerving sharply around the stopped automobile of E. J. Williams, before proceeding into the intersection and striking plaintiff’s vehicle.
In resolving this matter, it appears important to first determine which of the northbound traffic lanes the Lyons vehicle initially occupied and at what point, if . any, the car moved from.that lane. J. C. Williams, the driver, was accompanied by Arthur Lee Williams and Leddell Lattier, all occupying the front seat. The driver’s version of the. accident is that while he was driving north on Line Avenue in the outer, curb, lane at a speed of 25-30 m. p. h., the traffic signal at the 70th Street-Line Avenue intersection turned green before he arrived in the- immediate vicinity of the intersection; that, as he arrived - there, plaintiff’s vehicle executed a • left turn in front of him-; and that, although he applied' his brakes, he could not prevent .the accident. Williams’ companions corroborated his testimony. All three, of -the occupants testified they had continuously occupied the' outer lane for northbound traffic on Line Avenue since entering it at Eden Gardens a considerable distance south of the scene of the accident.
Robert C. Canada, plaintiff’s driver, testified that the first'time he saw the Falcon automobile was just before 'the impact of' the collision. Police officer R; L. Robertson, Jr., who assisted in an investigatipn. of the accident, testified Canada stated to him at the scene of the accident that “he . didn’t see the Falcon coming.” ■ Upon being questioned as to when he first saw the Falcon, plaintiff stated, “It all was in a split second as far as actually my seeing the car and at the time of the impact.”- .
Sally Ann Himes, who was seated on the left rear seat of' plaintiff's vehicle, first testified that she saw the Falcon in the inner northbound traffic lane of Line Avenue, but later explained she did not see it change, lanes and did not know how far behind the E. J. Williams car it was when it changed lanes; nor could she estimate its speed.
E. J. Williams, who was awaiting a change of signals at the intersection, testified that upon looking through his rearview mirror he saw the Falcon behind him in the inner northbound traffic lane, but said it ’ crossed into the outer lane at a distance estimated at 50, 75, and finally 100 feet to his rear.
No testimony of Bennie Ruth Himes, who was seated to the right of the driver in plaintiff’s vehicle, appears in the record.
From our review of the entire record, it clearly appears that plaintiff has failed to sustain his burden of proof as to the negligence of J. C. Williams. The rec- - ord, moreover, .establishes that it was only through the fault of Robert C. Canada that . the accident occurred. • • Plaintiff’s demands as against -J. C. Williams and Employers Mutual Liability Insurance Company should be rejected. He should, however, be permitted to recover against Charlie Canada-arid Federal Insurance Company.
Reliance is -placed on a provision of The Code of the City of Shreveport, Louisiana, which provides:
' “The driver óf a vehicle .approaching but not having--entered an intersection •'shall yield the -right of way to a vehicle within -such intersection and turning therein to the.left across the line of travel - of his- vehicle; pr'ovided, that the driver of the vehicle turning left has given the signal required by * * * this Code.”
This provision of the city code is without application or' effect. The .provision of the statute to which we have referred governs the situation. Frey v. Central Mutual In *479 surance Company (La.App.) 150 So.2d 822, 826 (3d Cir. 1963-cert, refused); Holliday v. Hartford Accident & Indemnity Co. (La.App.) 38 So.2d 235, 238 (2d Cir. 1949).
Remaining for consideration is the matter of the awards to which plaintiff is entitled. With reference to these, plaintiff complains of error allegedly committed by the trial court in (1) awarding only $750.00 for pain and suffering; (2) not allowing plaintiff recovery for the value of his automobile ; (3) allowing the intérvénór’s claim in the sum of $1,196.71; (4) not allowing a reimbursement for rental of a hired automobile; (5) not allowing recovery for loss of wages in the form of a “love offering” in the amount of $250.00 which he had anticipated in his ministerial work; and (6) failing to make an award for sick-leave time lost because of his inability to perform the duties of his employment.
With reference to the first of these specifications, plaintiff contends that the award should be increased, while defendants contend that it was excessive and should be reduced.
On the day of the accident plaintiff was admitted to a local hospital through Dr. Joseph Sarpy who consulted Dr. W. W. Fox, an orthopedist. Dr. Fox found, on examination, that plaintiff had sustained muscle spasms in the area of the right scapula. Bed rest, muscle relaxants, and pain relievers were advised and administered until plaintiff’s discharge from the hospital April 9, 1965. Dr. Fox was of the opinion that plaintiff had recovered and was able to pursue his usual occupation from the date of his release from the hospital. The doctor’s examinations showed no residual disability, nor any contusions on the body.
However, on April 29, 1965, plaintiff was sent by his counsel to Dr. James W. Tucker, who, on examination, found spasm of the posterior cervical muscles extending to the trapezius muscles, with some tenderness in the chest as well as over the lumbosacral area, and with mild spasm on flexion of the spine. The doctor’s diagnosis was that plaintiff had a cervical-dorsal sprain with occipital neuralgia, a contusion of the right latissimus dorsimuscle, and a mild lumbo-sacral sprain.
The trial court is vested with much discretion in awarding damages for personal injuries. We find no basis warranting disturbance of the award of $750.-00 made for plaintiff’s injuries and suffering.
With reference to items (2) and (3) of the specifications, the court obviously found as a fact, as counsel in briefs state, that immediately prior to the accident plaintiff’s automobile had a value of $2,000.00, and, with this, we are in accord. This action being in tort, plaintiff is entitled to an award based upon that evaluation inasmuch as the vehicle was found to have sustained a total loss.
However, we find no error in the allowance of the intervenor’s claim in the sum of $1,196.71. The intervenor, Excel Insurance Company, was a collision insurer of plaintiff’s automobile and, as such, it paid this sum to Associates Discount Corporation, a lien and mortgage holder on the car and a payee of its policy. This payment should, however, be credited on plaintiff’s award for the destruction of his car. Plaintiff’s net recovery on this item is, therefore, $803.29.
Referring to item (4) of the specifications, we find no error in the disallowance of the amount claimed for the rental of a substitute automobile in view of the fact that plaintiff was allowed full value of the automobile damaged in the accident and that the evidence failed to disclose the amount of time during which the use of such a substitute vehicle would have been required under the prevailing circumstances. Also, it is noted that the period of time plaintiff used the substitute automobile appears to have been substantially increased, if not entirely caused, by plain *480 tiff’s unreasonable position regarding settlement with his insurer.
With reference to plaintiff’s specification (5), covering an anticipated “love offering” of $250.00 with respect to plaintiff’s prospective ministerial services, we find no error in its disallowance. This is a matter of conjecture and speculation and is, therefore, insufficient to serve as a basis for an award of damages.
In connection with specification (6), it may be pointed out that while plaintiff was paid his full salary for the time he was disabled, that is, for seven days at $13.00 per day, the time lost was nevertheless charged against his sick-leave time. He is entitled to recover for that loss. Sebren v. Millers Mutual Fire Insurance Company of Texas (La.App.) 182 So.2d 99 (3d Cir. 1966); Thomas v. Paper Haulers, Inc. (La.App.) 165 So.2d 61 (2d Cir. 1964); Vogt v. Hotard (La.App.) 144 So.2d 714 (4th Cir. 1962—cert. denied).
Concerning the allowance for medical expenses, it is obvious from Dr. Tucker’s testimony that his examination was solely for the purpose of evaluation of plaintiff’s injuries in the preparation of his case. The charges therefor in the sum of $54.28, not being for medical treatment, should be disallowed.
For the reasons stated, we find plaintiff should recover on these items:
(1) Pain and suffering $ 750.00
(2) Loss of car 803.29
(3) Hospital expenses 190.73
(4) Dr. W. W. Fox 25.00
(5) Dr. Joseph Sarpy 50.00
(6) Loss of sick leave 91.00
Total $1,910.02
For the reasons assigned, the judgment appealed is amended by the rejection of plaintiff’s demands against the defendants J. C. Williams and Employers Mutual Liability Insurance Company of Wisconsin and by increasing plaintiff’s award to the sum of $1,910,02, and, as thus amended, it is affirmed at the cost of the unsuccessful defendants-appellants.
Amended and affirmed.