DIXON, Judge.
This is an appeal by a defendant against whom a deficiency judgment has been rendered.
Appellant complains that: (1) The plaintiff was not entitled to a deficiency judgment because the defendant was served with a notice of seizure and sale specifying that the sale would be without ap-praisement ; (2) that the defendant’s amended answer should have been allowed; (3) that the plaintiff loan company and the collision insurance company involved herein are identical, and that plaintiff’s officials, because of their relationship to the loan company and the collision insurer, prejudiced the rights of defendant; and (4) that the plaintiff charged usurious interest.
Defendant purchased a new automobile and financed it about six months before it was involved in an accident, following which there was a dispute with defendant’s collision insurer and litigation with the insurer of the other vehicle involved in the accident.
Plaintiff filed a petition for executory process on May 24, 1965; although he prayed for a sale with benefit of appraisement, the notice of seizure and sale and the first advertisement stated that the sale would be without benefit of appraisement. Domiciliary service of a second notice of seizure and sale and notice to appoint appraisers was made on defendant on June 22, 1965. The date of sale fixed *660 in that notice was July 14, 1965; the advertisement for the sale on July 14th stated that the sale would be “with benefit of appraisement.”
On June 22, 1965 the defendant obtained a temporary restraining order prohibiting the proposed sale. On July 1, 1965 judgment was rendered against the defendant; the judgment states that the cause had come on regularly on a motion to dissolve the temporary restraining order, and on the application of the defendant for a preliminary injunction.
The sheriff’s sale was held as scheduled; appraisers were appointed, and defendant’s wrecked automobile was purchased by the plaintiff for the sum of $859, the value fixed by two appraisers.
On June 5, 1968 plaintiff converted his action to an ordinary proceeding, filing a petition against the defendant for a judgment on the note held by plaintiff, subject to a credit of $2,262.24. Defendant answered on June 25th, simply denying each allegation of plaintiff’s petition. On October 24, 1968 defendant filed an amended answer.
Having been previously fixed regularly for trial, the case was called for trial on October 25, 1968, at which time the plaintiff filed a written objection to the amended answer and a motion to quash a subpoena. The objection to the amended answer was sustained, as well as the motion to quash the subpoena duces tecum. The plaintiff stated that he was “willing to continue the case until such time as counsel felt he was prepared for the new issues that were raised by the amended answer.” Neither the counsel for plaintiff nor for defendant requested a continuance.
The provisions in the Code of Civil Procedure concerning deficiency judgments are found in Articles 2771 and 2772. A deficiency judgment is available to a creditor only if property seized under ex-ecutory process was appraised. L.R.S. 13 :- 4106 prohibits a deficiency judgment if the creditor has taken advantage of a waiver of appraisement.
We find no violations of the statutory provisions governing a deficiency judgment in the instant case. Although the original notice of seizure and sale and the original advertisement stated that the sale would be without benefit of ap-praisement, that sale was not held; the subsequent notice of seizure and sale, the subsequent appraisal and sale for the appraised value satisfied the requirements of the law.
In language lacking circumspection the defendant has accused the loan company of entrapping him by virtue of the first notice of seizure and sale. The defendant alleges in brief that he was misled, thinking that the sale would be without benefit of appraisement.
There is no evidence to substantiate such argument. On June 22, 1965 the defendant filed his petition for an injunction against the sale scheduled to be held on June 30, 1965. On the day the injunction proceedings were filed, the defendant was served with the subsequent notice of seizure and sale, which noted that the sale would be held on July 14, 1965, with benefit of appraisement.
From the record before us, we can only conclude that a clerical error had been committed in the first notice of seizure and sale. The defendant was adequately represented by counsel at every stage of these proceedings, who had prepared a suit to enjoin the sale before the second notice was served. There is no showing that he would have taken any different action if the first notice of seizure had been for a sale with benefit of appraisement.
The amended answer which the defendant filed the day before the case went to trial alleged that the defendant had several loans with the plaintiff which had been refinanced, on which occasion the interest was compounded and capitalized into the new loan. The defendant also *661 alleged that the unearned portion of the insurance premiums was not rebated, resulting in a usurious interest charge in violation of L.R.S. 6:951 ff. The defendant alleged in his answer that the relationship between the collision insurer and the finance company was so close that the same personnel represented both institutions, necessarily resulting in a situation prejudicial to the rights of the borrower.
The trial judge acceded to the defendant’s request to make an offer of proof and attach it to the record. The offer of proof was made at the conclusion of the trial, and consisted of a statement by plaintiff’s attorney. Generally, the statement was to the effect that the automobile was worth substantially more than the value placed on it by the appraisers at the time of the sale; that an examination of the plaintiff’s records and the collision insurer’s records would show that they were owned and controlled by the same group, operating from the same building, with the same personnel.
We are of the opinion that the offer of proof did not indicate the existence of evidence relevant either to the issues properly before the court, or raised by the proposed amended answer.
The very reason for the requirement that a notice to appoint appraisers be served on the debtor and the subsequent appointment of appraisers, is to fix the value of the automobile at the time of the sale. There is no allegation made sufficient to justify an inquiry into the appraisal.
In view of the statements contained in the offer of proof which defendant’s counsel made at the close of the trial, we conclude that the defendant was in no way prejudiced by the sustaining of objections to questions and to the amended answer filed the day before the trial.
Defendant’s arguments concerning the relationship between the plaintiff and the collision insurer are interesting, but hardly more. The intimation is that a practice exists in which the collision insurer, when an automobile subject to the lender’s mortgage is wrecked, declares the wrecked vehicle a “constructive loss,” fixes a low value on the car, forces the owner-debtor to settle, pays the lender under the loss-payable clause of the chattel mortgage, permitting the lender to proceed to capitalize on the debtor’s misfortune by obtaining a deficiency judgment for the difference between what was owed and what was paid by the collision insurer, and then to repair and sell the wrecked automobile for an additional profit. The record before us supports no such conclusion. The value of Small’s automobile has been litigated in another case which was appealed to this court. See Small v. Lyons, La.App., 198 So.2d 475 (1967). The defendant complains of the fact that he is unable to read the signature of one of the appraisers appointed to appraise the wrecked automobile prior to its sale. There is no evidence offered and no allegations of fact made to indicate that the appraisal was not otherwise regular. Defendant’s attack upon the appraisal is insubstantial. (It is to be noted that the record discloses the amount of the appraisal to be $859; fhe wreck was sold by the plaintiffs for $773.29.) The relationship between plaiiitiff and the collision insurer, if as alleged by defendant, is not of itself one to excite suspicion and cast doubts on the validity of this deficiency judgment. No relevant evidence of wrongdoing affecting Small’s rights has been offered.
Finally, the defendant seeks to take advantage of L.R.S. 6:960, subd. B, which prevents the recovery of finance charges by a lender “willfully violating” the provisions of the statute fixing the maximum finance charges recoverable. R.S. 6:957 provides that the finance charges shall not be in excess of an amount equivalent to 1}4% per month simple interest on the declining balances. The amount financed by *662 the plaintiff was $3,015.15. Plaintiff computed its finance charges at $496.29. It allowed a rebate attributable to unearned finance charges in the amount of $222.21, a rebate of $32.07 for unearned credit life insurance, and $26.75 for unearned collision insurance premiums.
There is no evidence in this record that the plaintiff “willfully” violated the statute fixing the maximum finance charges recoverable. The difference in the price of the new car and the defendant’s trade-in was $2,839.98. The defendant was charged $160.17 for insurance premiums and “other benefits.” These charges were itemized. This amount charged for premiums was for one year’s collision insurance with comprehensive coverage and road service, and for credit life insurance. Neither plaintiff nor defendant has accommodated the court with computation of the maximum allowable finance charges; our mathematics (not always an exact science) indicates that the finance charge of $496.-29 was considerably smaller than that allowed by the statute.
R.S. 6:958 provides that upon prepayment of a debt governed by the statute covering automobile financing, a refund of unearned finance charges shall be made. The method used is named in the statute as “the rule of 78” or “the sum of the digits” refund method. A formula is derived from the provisions of the statute. Application of the formula results in a factor to be used in computing the earned and. unearned finance charges. These charges are not in direct proportion to the length of time remaining before maturity of the debt. The finance charges are figured as simple interest on a declining balance, which means that a very substantial portion of the monthly payments in the early months of the life of the loan is attributable to finance charges.
Defendant argues that: the car was wrecked six months after it was purchased; Small was entitled to a credit rebate of ^ths of the finance charges, or $425.96, according to defendant’s arithmetic; and, since the insurance premium was for one year only, Small was entitled to recover one-half the premium, or a total of $506.-05.
There is no requirement that either the unearned finance charge or the unearned insurance premium be computed on a mathematical basis, proportionate to the length of time remaining under the contracts. As far as we can determine, the finance charge originally levied by the plaintiff was substantially less than that allowed by law, and the unearned interest and premiums credited to the defendant are correct and in compliance with the requirements of the statutes.
Accordingly, the judgment appealed from is affirmed, at the cost of defendant-appellant.