254 So.2d 582

**PARISH OF JEFFERSON**

v.

**LOUISIANA DEPARTMENT OF CORRECTIONS.**

No. 51299.

June 7, 1971.

On Rehearing Nov. 8, 1971.

---

Jack P. F. Gremillion, Atty. Gen., Melvin L. Bellar, Frank L. Dobson, Asst. Attys. Gen., for defendant-appellant.

Roy L. Price, Parish Atty., James S. Arceneaux, Asst. Parish Atty., Sam J. Chauppette, Sp. Counsel, for plaintiff-appellee.

M. Hepburn Many, Many, Hartman, Lo-Coco & Dwyer, New Orleans, Dodd, Hirsch, Barker, Avant & Wall, John L. Avant, Baton Rouge, for amicus curiae.

HAMLIN, Justice:

Defendant appeals from a judgment of the trial court in favor of the Parish of Jefferson and against Louis M. Sowers,[1] Director of the Louisiana Department of Corrections, which forever enjoined, restrained, and prohibited Sowers and his successors in office from purchasing the site and facilities known as the "House of The Good Shepherd," containing approximately thirty acres of land on the River Road, Parish of Jefferson, and declared sub-section 4 of Sec. 902 of Act 353 of 1970, Act 452 of 1970, and Sec. 834 of Act. 192 of 1968, unconstitutional.

Act 192 of 1968 amended Chapter 7 of Title 15 of the Louisiana Revised Statutes of 1950 by adding thereto a new part to be designated as Part III-A thereof to contain R.S. 15:821 through 15:839, relative to prisons and correctional institutions. It provided for the merger of the Louisiana Board of Institutions and the Department of Institutions and consolidated the functions thereof into the Louisiana Department of Corrections (hereinafter referred to as the Department). LSA-R.S. 15:-834 was enacted to read in part as follows:

"Sec. 834. Lands under control of department; lease, rights of way, purchase

" * * * The director shall also have the authority, with the approval of the Board of Corrections and the Governor, to buy lands needed for the proper use of any institution under the jurisdiction of the department; and also to sell and transfer to any other state agency real property belonging to the state and under the jurisdiction of the department."

Act 246 of 1968 provides in part:

"To amend Chapter 7 of Title 15 of the Louisiana Revised Statutes of 1950 by adding thereto a new Part, to be des-

---

1. Plaintiff reiterated by amended petition the allegations of its original petition and stated that it desired to amend its entire original by: (a) deleting all reference to the Louisiana Department of Corrections as the defendant; and, (b) by inserting in its place and stead, Louis M. Sowers, Director of the Louisiana Department of Corrections, as the defendant.

ignated as Part IV–A thereof and to contain R.S. 15:891 through 15:894, relative to prisons and correctional institutions; to authorize the Louisiana State Department of Institutions to create and establish a juvenile correctional institution, a women's correctional facility, an adult correctional institution and a diagnostic and treatment center, and to provide with respect to the personnel for said center.

"Be it enacted by the Legislature of Louisiana:

"Section 1. Part IV–A of Chapter 7 of Title 15 of the Louisiana Revised Statutes of 1950, comprising R.S. 15:891 through R.S. 15:894, is hereby enacted to read as follows:

## "PART IV–A. ADDITIONAL INSTITUTIONS

"§ 891. Juvenile correctional institution

"The Louisiana State Department of Institutions is hereby authorized to create, establish, operate and maintain a juvenile corectional institution in the greater New Orleans area for children under seventeen years of age who have been or shall be legally adjudged delinquent or neglected juveniles, as defined by law, by a juvenile court of Louisiana or by the district courts sitting as juvenile courts."

Act 353 of 1970 provides in part:

"To amend Chapter 7 of Title 15 of the Louisiana Revised Statutes of 1950 by adding thereto a new Part to be designated as Part IV–B thereof to contain R.S. 15:901 through 15:907, and *to repeal Sections 891,* 911 through 918, 971 through 978 and 1011 through 1018 *Title 15 of the Louisiana Revised Statutes of 1950,* all relative to juvenile institutions operated by the Louisiana Department of Corrections; to establish a juvenile reception and diagnostic center; to provide for the commitment of juveniles to the said department of corrections; to require the examination of all such juveniles at the juvenile reception and diagnostic center; to provide for the assignment by the said department of corrections of juvenile offenders to the several juvenile institutions operated by the said department of corrections; and to provide with respect thereto.

"Be it enacted by the Legislature of Louisiana:

"Section 1. Part IV–B of Chapter 7 of Title 15 of the Louisiana Revised Statutes of 1950 is hereby enacted to read as follows:
" * * *

"§ 902. Juvenile institutions

"The department of corrections shall establish, operate and maintain the Lou-

isiana Training Institute for juveniles, with the following branches:

" * * *

"(4) the Louisiana Training Institute, to be located in the greater New Orleans area." (Emphasis ours.)

Act 452 of 1970 provides:

"To authorize Louisiana Department of Corrections to purchase the site and facilities known as the House of the Good Shepherd, containing approximately thirty acres of land on the right descending bank of the Mississippi River located on the river road, near 'Bridge City' in the Parish of Jefferson, State of Louisiana; and to establish on said site the juvenile correctional institution *authorized by the provisions of Act No. 246 of 1968*, and otherwise to provide with respect thereto.

"Be it enacted by the Legislature of Louisiana:

"Section 1. The Louisiana Department of Corrections is hereby authorized to purchase the site and facilities known as the House of the Good Shepherd, containing approximately thirty acres of land on the right descending bank of the Mississippi River, located on the river road near 'Bridge City' in the Parish of Jefferson, State of Louisiana; and to establish on said site the juvenile correc-

tional institution authorized by the provisions of Act No. 246 of 1968.

"Section 2. The Louisiana Department of Corrections is authorized to expend out of funds available to it such sums as may be necessary for the implementation of this Act.

"Section 3. All laws or parts of laws in conflict herewith are hereby repealed.

"Section 4. The necessity of the immediate passage of this Act having been certified by the Governor to the Legislature while in session, in accordance with Section 27 of Article III of the Constitution of Louisiana, this Act shall become effective immediately upon approval by the Governor.[2]" (Emphasis ours.)

By virtue of the legislation supra, the Department commenced negotiations for the purchase of the property herein involved— the "House of The Good Shepherd," located in Jefferson Parish but embraced in the Greater New Orleans Area. It is stipulated that the Governor of the State of Louisiana signified his consent to the negotiations for the purchase of the property.

. Mr. Hugh Ford, Planning Director of the Department of Planning, Parish of Jefferson, testified that the "House of The Good Shepherd" area was originally zoned as "Single Family Residential" when the first Comprehensive Zoning Ordinance was

---

2. The bill was submitted to the Governor; no action was taken within the time provided by the Constitution; the bill became law without the approval of the Governor.

adopted by the Parish Council in 1958. In 1959 or 1960, the property was reclassified "R-3" for the specific purpose of allowing a private institution which could not be located on the site if it were zoned "R-1"—single family residential—to be located in the area. The property was reclassified in 1969 to "R-2," which permits single family structures; two-family structures; churches; schools; buildings used exclusively by local, State, and Federal Offices, except penal and correctional institutions. Presently, the non-conforming use under which the "House of The Good Shepherd" operates is permitted by Section XIX of the Comprehensive Zoning Ordinance.[3]

Alleging violations of the zoning ordinances of Jefferson Parish and numerous constitutional violations with respect to the alleged purpose (establishment of a juvenile correctional institution) for which the Department would use the "House of The Good Shepherd" if purchased, the Parish of Jefferson instituted the present injunction proceedings in which it prayed that the Department be enjoined from "(1) Purchasing the site and facilities known as the 'House of The Good Shepherd' in the Parish of Jefferson, State of Louisiana; and (2) Establishing on said site the juvenile correctional institution that was au-

thorized by Act No. 246 of 1968." It also prayed that certain parts of the legislation supra be declared unconstitutional.

The Sisters of the Good Shepherd intervened in the proceedings in support of the position of the defendant who asked that plaintiff's demands be rejected. Intervenor averred that it had agreed to sell its property to the State of Louisiana through its Department of Corrections on certain terms and conditions.

With the permission of the trial court, counsel for the defendant recalled prefatory and peremptory exceptions previously filed. Counsel consented that the issues go to trial on both the Rule for Preliminary Injunction and on the Merits of the Application for a Permanent Injunction.

Initially, we find that the trial court had the authority to try this matter. We agree with its statement that, "There is no question in the Court's mind that the Court has a right and a duty to invoke injunctive relief in cases dealing with the constitutionality of the State Statutes. The Court cites as authority for this, the case of Carso vs. Board of Liquidation of State Debt, 205 La. 368, 17 So.2d 358; and the Court also cites the case of city of Natchitoches v. State of Louisiana, Third Circuit 1969 [La.App.], 221 So.2d 534."

---

3. Section XIX recites in part: "Any lawful building structure, building permit issued or use existing on or prior to the adoption of Ordinance No. 5687, or whenever a district shall be changed by amend-

ment to this Ordinance, may be continued although such building, structure or use does not conform to the regulations of the district in which it is located."

In its reasons for judgment the trial court stated that it was concerned with the effect of LSA–R.S. 15:891, as set forth in Act No. 246 of 1968, supra. The question, "was this Section 891 the law immediately after the passage of Act 452 of 1970 and immediately after the passage of Act No. 353 of 1970?" was posed and was answered as follows:

"It is quite clear from ACT No. 353 that Section 891 of ACT No. 246 of 1968 was repealed relative to the creation of a Juvenile Correctional Institution in the Greater New Orleans Area.

"In looking at the Title of ACT No. 353 and in dealing with the provision for the assignment of juvenile offenders, in ACT 353 of 1970, the TITLE indicated that these juvenile offenders were to be assigned to the several juvenile institutions OPERATED by the said Department of Corrections. It did not seem to indicate in the Title that they were referring to anything but Juvenile Training Institutes—institutes which were already in being. It says 'OPERATED.' That to the Court's mind did not refer to any institutions to be CREATED.

"Then we are faced with [the] proposition that in this same ACT No. 353 of 1970 there is legislative intention by the repeal of Section 891 of ACT No. 246 to abolish the CREATION of a Juvenile Correctional Institution in the Greater New Orleans Area. This appears as part of ACT No. 353, being Section 3 of said Act. Yet in the same Act under Section 902 of ACT No. 353 the Legislature states: 'The Department of Corrections shall establish, operate and maintain the Louisiana Training Institutes for Juveniles at the following branches in Section 4, Louisiana Training Institute to be located in the Greater New Orleans Area.' Yet Section 902, sub-section 4 of Act No. 353 is not provided for in the Title to said Act. Accordingly, the Court feels that this is broader than the Title and hereby declares Section 902 of ACT No. 353 of 1970, sub-section 4, is HEREBY DECLARED TO BE UNCONSTITUTIONAL."

The trial court also found, as stated supra, Act 452 of 1970 unconstitutional and stated:

"It is the Court's opinion that this Act refers to its authority for the creation of a Juvenile Correctional Institution as ACT No. 246 of 1968. As of today and when ACT No. 452 of 1970 became law, then ACT No. 246 of 1968 which provides for the CREATION of a Juvenile Correctional Institution is no longer in being. Therefore, the authority which the Preamble of this Act uses as its authority for the establishment or the purchase of this property no longer exists. Since this authority no longer exists, and since the Court has found that Section 906, sub-

section 4 of ACT No. 353 is UNCONSTITUTIONAL, the Court further concludes that ACT No. 452 of 1970 is UNCONSTITUTIONAL."

In this Court appellant assigns four errors to the judgment of the trial court. We find them to be with merit and shall dispose of them infra. Amicus curiae briefs in defendant's behalf were filed by the Louisiana AFL-CIO and the Greater New Orleans Federation of Churches, and the issues presented therein shall also be discussed infra.

Herein the Parish of Jefferson submits that this Court should affirm the judgment rendered by the trial court and maintain the permanent injunction granted in force against the Department.

### SPECIFICATION OF ERROR NO. 1

"The trial court erred in holding that Act 452 of 1970 is unconstitutional on the asserted grounds that the authority for the operation of the juvenile training institute in the Greater New Orleans area, as authorized by R.S. 15:891 of Act 246 of 1968, was repealed by Act of 1970."

The issue to be determined under this Specification of Error is whether Act 452 of 1970 is to be rendered unconstitutional because it made reference to the juvenile correctional institution authorized by the provisions of Act No. 246 of 1968, said act being repealed in part by Act 353 of 1970.

Act 353 of 1970 repealed only that part of Act 246 of 1968, LSA–R.S. 15:891, supra, which provided for the creation, establishment, operation, and maintenance of a juvenile correctional institution in the Greater New Orleans area for children under seventeen years of age. Act 353 of 1970 provided that the Department shall establish, operate, and maintain the Louisiana Training Institute to be located in the Greater New Orleans Area, LSA–R.S. 15:-902. Act 452 of 1970—it became law at the same time as Act 353 of 1970—authorized the Department to purchase the "House of The Good Shepherd" facilities for the establishment on said site of a juvenile correctional institution authorized by Act No. 246 of 1968.

In asserting the constitutionality of the legislation herein involved, defendant pertinently argues:

"Act 353 was a general revision of the statutory general law dealing with juvenile institutions and the creation of a state-wide Louisiana Training Institute.[4] It would have been inappropriate to incorporate therein the special provisions dealing with the purchase of property and the specific location of this branch of the Louisiana Training Institute on

---

4. In addition to providing for the Louisiana Training Institute to be located in the Greater New Orleans Area, the Act also provided for branches to be located in Rapides Parish, Ouachita Parish, and East Baton Rouge Parish.

the property to be purchased from the Order of the Good Shepherd, so a separate Act was decided upon—Act 452 of 1970. In Act 452 the legislature could not refer to Act 353 of 1970 for the purpose of making it clear that the institution provided for in Act 452 was one and the same as that which they had previously provided for in Act 246 of 1968 for the greater New Orleans area because Act 353 was not yet an Act; so they referred to Act 246 of 1968 solely for the purpose of making it clear that the institution to be established on the property known as the House of the Good Shepherd was one and the same as the institution which had been authorized in Act 246 of 1968, the authorization for which was transferred into Act 353 of 1970. If Act 353 had failed to pass in the 1970 session, Act 452 would still have been whole and complete and this badly needed institution could still have been brought into existence." [5]

"In construing a statute, the primary object is to ascertain and, if possible, give effect to the intention and purpose of the legislature as expressed in the statute. Since the meaning is to be determined from a general consideration of the act as a whole, all parts, provisions or sections must be read together; each must be considered with respect to, or in the light of, all the other provisions, and construed in harmony with the whole. The intent as deduced from the whole will prevail over that of a particular part considered separately; meaning should be given, if possible, to each and every section, and the construction placed on one portion should not be such as to obliterate another; so, in determining the meaning of a word, phrase or clause, the entire statute is to be considered." Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336, 339 (1962). Courts should construe statutes so as to give them the meaning intended by the Legislature; they should not construe them so rigidly as to give them preposterous or odd meanings. Hayes v. Orleans Parish School Board, 256 La. 677, 237 So.2d 681; Webb v. Parish Council of Parish of East Baton Rouge, 217 La. 926, 47 So.2d 718. "It is well established that in the construction of statutes absurd results should be avoided, and when the literal construction would produce such a result, the letter of the law must give way to its spirit and the statute should be construed so as to produce a reasonable result." Bradford v. Louisiana Public Service Commission, 189 La. 327, 179 So. 442, 446. See, LSA–C.C. Art. 18; Frey v. Central Mutual Insurance Company, La.App., 150 So.2d 822.

Act 353 of 1970 reincorporated in great part LSA–R.S. 15:891, supra, by enacting LSA–R.S. 15:902. No authority granted the Department by Act 246 of 1968 was

5. Acts 353 and 452 of 1970 both became law at 12:00 o'clock noon on July 29, 1970.

taken away from it by Act 353. In fact, Act 353 strengthened the Department's authority by using the mandatory phrase "shall establish."

Act 452 of 1970 is a companion act to Act 353 of 1970. The latter establishes the basis for the authorized purchase of the property identified in Act 452 of 1970. A reading of the involved leglislation makes clear the intention of the 1970 Legislature to authorize the Department to purchase the instant thirty acre site in Jefferson Parish and establish thereon a juvenile correctional institute. LSA–R.S. 15:834, enacted as a part of Act 192 of 1968, supra, which empowered the Director of the Department with the approval of the Department and the Governor to buy lands was not repealed. (The trial judge declared it unconstitutional.) Certainly, the Legislature did not intend to do a vain and useless thing when it passed Act 452 of 1970; its referral to Act 246 of 1968 indicates an intent to identify and describe.

We conclude that the acts involved under this Specification of Error—those parts repealed and those in force and effect —are all in pari materia and must be construed with a reference to each other. "Laws in pari materia are required to be construed together. Abercrombie v. Gilfoil, La.App., 205 So.2d 461. 'The Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject.

The meaning and intent of a statutory provision, therefore, is to be determined by a consideration of the statute in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the Legislature in enacting it. * * *' Legros v. Conner, La.App., 212 So.2d 177, 180.'' State v. Seals, 255 La. 1005, 233 So.2d 914, 918 (1970). See, LSA–C.C. Art. 17; Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362; Mercantile Nat. Bank v. J. Thos. Driscoll, Inc., 194 La. 935, 195 So. 497; Schwartz Supply Company v. Zimmerman, 228 La. 861, 84 So.2d 438.

We conclude that Act 452 of 1970 is not unconstitutional on the ground that in its title it refers to Act No. 246 of 1968, repealed in part by Act 353 of 1970.

SPECIFICATION OF ERROR NO. 2

"The trial court erred in holding that Act 353 of 1970, with regard to R.S. 15:902, sub-section 4 thereof, was unconstitutional as violative of La.Const. Art. 3, Sec. 16, in that Act 353 of 1970 did not have a title indicative of its object as related to R.S. 15:902."

The title of Act 353 of 1970 states that the Act amends the Louisiana Revised Statutes by adding a new part designated as Part IV–B, containing R.S. 15:901

through 15:907. The title also states that certain sections of Title 15 are repealed, all relative to juvenile institutions operated by the Department. The title further states that the Act provides for the assignment by the Department of juvenile offenders to the several juvenile institutions operated by the Department. The title concludes with the phrase "and to provide with respect thereto."

As stated supra, the trial judge was of the opinion that Section 902, sub-section 4 of Act No. 353 of 1970, is not provided for in the Act's title. He also found that the title of the Act only referred to institutions in operation and not to those to be created. Thus, the trial judge found that Act 353 of 1970 with regard to LSA–R.S. 15:902, sub-section 4, violates Art. III, Sec. 16, La. Const. of 1921.[6]

Section 16 of Article III was discussed in detail in Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49 (1942).

We said that in order to judicially determine whether a statute is violative of the section, it is necessary to first examine the body of the act in order to ascertain its purpose or aim. In examining the body of an act in relation to its title, we noted, "It is not the purpose of this article [Sec. 16] to require that the title be an index to the contents of the act, or that every end and means convenient or necessary for the accomplishment of the general object of the act be set out at length in the title, but it is deemed sufficient, under the article, that the act contain but one object and that the object be fairly stated, although it be expressed in general terms, in the title of the act. All things proper or necessary to carry out the general object, so stated in the title, are deemed to be within the scope of the title. * * *" Southern Hide Co. v. Best, 176 La. 347, 145 So. 682 (1933).

In Ricks, after citing and quoting numerous authorities,[7] we quoted with ap-

---

6. "Every statute enacted by the Legislature shall embrace but one object, and shall have a title indicative of its object.
   "The Legislature may, however, by means of a single statute, enact or revise a system of laws of a general or public nature, such as the general statutes, or a codification of laws on the same general subject matter, or both. Such a statute shall be deemed to embrace but one object and its title need only refer to the general purpose and scope of the statute." Art. III, Sec. 16, La.Const. of 1921.

7. "There is no necessity of the title being a complete index to every section of the act. It is only necessary that it shall, in general terms, direct attention to the purposes of the law; and if the different parts of the act lead to one conclusion, point to one object, it would not then be reasonable to set aside an act, in so far as requirements have been followed." State v. Hincy, 130 La. 620, 58 So. 411 (1912); see, Wm. M. Barret, Inc. v. First Nat. Bank of Shreveport, 191 La. 945, 186 So. 741 (1939), which quoted Hincy.
   "Under corresponding sections in preceding constitutions, it was required that the object of the law be 'expressed' in its title. The effect of the changing of the wording of the constitutional provision was to relax the previous requirement that the

proval the following from Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508, 516: "It is the well-settled jurisprudence of this State that, where an Act contains more than one object and only one of those objects is expressed or indicated by the title, the entire statute will not be held unconstitutional on that score unless the object, which is not expressed in the title, is so wholly dependent upon the expressed object that it cannot be separated therefrom without destroying the intention manifested by the Legislature in passing the Act. * * * "

We found, supra, under Specification of Error No. 1 that Act 452 of 1970 is constitutional and that it is a companion act to Act 353 of 1970. We therefore have two acts of 1970, which, when read in pari materia—as we found supra that they must be—specifically set forth the program of the Department with respect to juvenile offenders and delinquents. Moreover, we find that under the above jurisprudence Act 353 of 1970 meets the tests therein set forth. In substance, Act 353 of 1970 provides for the establishment of diagnostic and reception centers for juvenile offenders and delinquents and for the assignment of such juveniles to certain institutions. The estab-

statute must 'express' its object, so now all that is required is that the title of the statute should be 'indicative' of its object. The constitutional provision must be construed broadly rather than narrowly with a view of effectuating, not of frustrating,

lishment, operation, and maintenance of the Louisiana Training Institute in the Greater New Orleans Area is a matter necessary and proper to the accomplishment of the general object of the Act; consequently, there was no need for the title to recite the provisions of LSA–R.S. 15:902. We conclude that Act 353 of 1970 meets the requirements of Art. III, Sec. 16, La. Const. of 1921; sub-section 4 of Sec. 902— LSA–R.S. 15:902—of Act 353 of 1970 is therefore constitutional.

The cases of State v. Jackson, 137 La. 741, 69 So. 158; Altom v. Mt. Vernon Oil & Gas Co., 174 La. 775, 141 So. 457; Sullivan v. Minden Lumber Co., 135 La. 331, 65 So. 479; A. & M. Pest Control Service, Inc. v. LaBurre, 247 La. 315, 170 So.2d 855; and, Airey v. Tugwell, 197 La. 982, 3 So.2d 99, cited by plaintiff, are not apposite. The bodies of the acts involved in those cases were unconstitutionally broader or broader in part than the title of the acts.

SPECIFICATION OF ERROR NO. 3

"The trial court erred in holding that Act 192 of 1968 is unconstitutional with respect to R.S. 15:834, as created by said Act, on the asserted grounds that the title to said Act was not indicative of the contents of R.S. 15:834."

the legislative purpose. This is the rule prevailing everywhere for the construction of such a constitutional provision. * * " Jackson v. Hart, 192 La. 1068, 190 So. 220 (1939), wherein the Court discussed Art. III, Sec. 16, La.Const. of 1921.

After declaring unconstitutional Act 452 of 1970 and sub-section 4 of Section 902 of Act 353 of 1970, the trial court permitted plaintiff, with the consent of defendant, to amend its petition to include an additional cause of action insofar as Section 834 of Act No. 192 of 1968 was concerned. Plaintiff alleged that the act was unconstitutional on the basis that the preamble of the act does not mention the authority to purchase lands by the Director of the Department.

After the above amendment, the trial court stated:

"Well, I think it would be in order that the Court indicates that it is the feeling of the Court that Section 834 of ACT No. 192 of 1968, insofar as it provides for the Director of the Department of Corrections to purchase lands on behalf of the Department with the approval of the Board and the Governor, is unconstitutional and the Court hereby declares the same to be UNCONSTITUTIONAL for it is not provided for in the TITLE of ACT No. 192 of 1968."

Supra, we discussed Act 192 of 1968. It is a detailed, broad, and lengthy act relative to prisons and correctional institutions. We find tha. the authorizing of the Director of the Department, LSA–R.S. 15:834, to buy lands needed for the proper use of any institution under the jurisdiction of the Department was a grant of power to him which he needed to accomplish the general object of the act. Such authorization did not have to be mentioned in the title of the act. The authorities cited and quoted under Specification of Error No. 2, supra, are apposite to this Specification of Error. We conclude that Section 894, LSA–R.S. 15:894, of Act 192 of 1968 is constitutional and not violative of Article III, Section 16, La. Const. of 1921.

SPECIFICATION OF ERROR NO. 4

"The trial court erred by failing to pass upon the question of law as to whether the zoning ordinances of the Parish of Jefferson, as authorized by La. Const. Art. 14, Sec. 29(a) apply to governmental institutions of the State of Louisiana."

Because of its rulings, supra, and its findings of unconstitutionality of the legislation herein involved, it was not incumbent upon the trial court to pass upon the issue of zoning. However, plaintiff alleged in Article 21 of its petition that Act No. 452 of 1970 is unconstitutional in that the act "permits the Louisiana Department of Corrections to effect a change in use of property, which power is exclusive to Jefferson Parish, without first applying for a change in classification through the Planning Director of Jefferson Parish and without giving Jefferson Parish an opportunity to have a public hearing before the Jefferson Parish Council, all in violation of the Comprehensive

Zoning Ordinances of Jefferson Parish, thereby depriving plaintiff of the equal protection of the law and further depriving plaintiff of a property right without due process of law." In other articles of its petition, plaintiff made allegations with respect to the operations of the "House of The Good Shepherd." It also alleged that the use of the property authorized by Act 452· of 1970 was definitely different from that presently exercised by the Sisters of The Good Shepherd. Defendant denied the allegations of Article 21 of plaintiff's petition and averred in Article 19 of its answer that, "the House of the Good Shepherd has been operating as a correctional home· for many years preceding the alleged zoning ordinance receiving commitments of juveniles from various courts within the Greater New Orleans area."

We conclude that the matter of zoning was at issue in the trial court. Testimony was adduced with respect thereto, and exhibits—zoning ordinances—were offered in evidence. Under the authority of Article 2164 of the Code of Civil Procedure, we. shall render a decision with respect to Specification of Error No. 4. Cf. Board of Com'rs of Orleans Levee Dist. v. Shushan, 197·La. 598, 2 So.2d 35.

Art. XIV, Sec. 29, La. Const. of 1921, provides:

"The Parish of Jefferson is authorized to zone its territory; to create residential, commercial and industrial districts, and to prohibit the establishment of places of business in residential districts." ·

The foregoing section is a constitutional grant of part of the police power of the State of Louisiana. It is to be noted, however, that the grant places no restriction upon the legislative power of the State Legislature, nor does it relinquish any power of the State Legislature to establish governmental institutions in territory zoned by the Parish of Jefferson.

"In this connection, it is well to observe that it is fundamental that the Legislature is supreme except when restricted by the Constitution and that, unlike Congress, which can do nothing that the Federal Constitution does not authorize, may do everything that the State Constitution does not prohibit. * * * Thus, in view of this basic principle, the fact that the Constitution, by special provision granted to municipalities the power to zone their territory, cannot be regarded as a tacit restriction or limitation on the legislative power to delegate such authority to other public subdivisions. Nor did the fact that the Legislature saw·fit to submit for approval of the electorate other constitutional amendments with respect to the creation of airport zones and, later, for zoning in certain parishes detract in any way from the plenary power of the Legislature to delegate by statute similar authority to other parishes not included in the constitutional amendments."

Plebst v. Barnwell Drilling Company, 243 La. 874, 148 So.2d 584, 589, 590 (1963). See, Kane v. Louisiana Com'n on Governmental Ethics, 250 La. 855, 199 So.2d 900 (1967).

Because of the non-restrictive language employed in Section 29 of Article XIV, supra, and because of our findings, supra, that the legislation herein involved is constitutional, we conclude that the State Legislature is not subordinated to the Jefferson Parish Authorities with respect to zoning. The State Constitution does not prohibit the location of correctional institutions on the site selected by the State Legislature. Therefore, the Legislature was supreme in its selection.[8]

For the reasons assigned, the judgment of the trial court is reversed and set aside. Plaintiff's suit is dismissed at its costs.

DIXON, J., concurs in the result.

SUMMERS, J., dissents.

SANDERS, J., takes no part.

TATE, Justice (concurring).

The writer concurs in the majority opinion. He feels, however, that such opinion grounds too broadly its decision of the zoning issue. He further feels that it may be appropriate to discuss more fully the

question of the interest or standing of the Parish of Jefferson to question the constitutionality of the statute authorizing the state agency to purchase the "House of the Good Shepherd" in Jefferson Parish and to establish juvenile correctional facilities on the site.

As to the zoning issue, I do not feel it appropriate for this court to hold that a state statute, ipso facto, displaces a local zoning ordinance. It may well be that, by virtue of a statute with this specific intent, local zoning may be set aside to permit operation of a state institution in the vicinity. I doubt, however, that, here, the legislature specifically intended to set aside zoning ordinances of the locality, where it merely authorized purchase of the institution in question. However, the operation of these facilities by the state for continued similar non-conforming use as permitted the predecessor in title is not prohibited by the local zoning ordinance. The zoning issues should be decided on such basis, not the broader grounds relied upon by the majority.

The Parish has sufficient interest or standing to sue to prevent a violation of its zoning ordinance. La.R.S. 33:4728; 3 Rathkopf, Law of Zoning and Planning, Section 66-1 (3d ed. 1971).

The question was raised sua sponte whether the parish also had sufficient "real

---

8. Because of our finding, it is not necessary to discuss the use to which the property involved is to be put.

and actual interest", La. CCP Art. 681, to bring this action to enjoin the purchase on the grounds of the unconstitutionality of the enabling act. This latter is a more difficult issue.

A taxpayer has been held to have sufficient interest or right of action as to authorize his bringing suit to enjoin payment of funds under an allegedly unconstitutional statute. Carso v. Board of Liquidation, 205 La. 368, 17 So.2d 358 (1944). A local government entity has enough interest to bring suit to enjoin as unconstitutional the enforcement of a statute changing its form of government. City of Gretna v. Bailey, 141 La. 625, 75 So. 491. See also State ex rel Tulane Homestead Ass'n v. Montgomery, 185 La. 777, 171 So. 28 (1936), and Annotation 116 A.L.R. 1037 (1938). Here, however, we have a parish bringing suit on behalf of its taxpayers, Art. XIII (but not the taxpayers themselves), to enjoin as unconstitutional the enforcement of a statute that affects its citizens (but not the parish government, aside from zoning).

Under all of the present circumstances, in my opinion, the plaintiff parish does have sufficient "real and actual interest" to assert its demand, on behalf of its citizens, that the statute in question be enjoined as unconstitutionally affecting the property and people of the parish. In this determination, I take into consideration: (a) that the parish does admittedly have sufficient interest to bring the related cause

of action concerning the local zoning ordinance; (b) that the statute in question (Act 452 of 1970) specifically affected Jefferson Parish alone, in that it authorized a state agency to purchase the present juvenile detention facilities in Jefferson Parish and to establish "on said site" the juvenile correctional institution; (c) that, by such holding, we permit speedy review of the substantial contentions of an active and justiciable controversy, thus avoiding a multiplicity of actions and further litigation by artificial parties raising the same contentions we can decide here. See: 17 McQuillin, Municipal Corporations, Section 49.57 (3d Ed. 1968); 64 C.J.S. Municipal Corporations §§ 2186b(2) and 2190; Jaffe, Standing in Public Actions, 74 Harv.L.Rev. 1265 (1961) and Standing in Private Actions, 75 Harv.L.Rev. 255, 305 (1961).

For these reasons, I respectfully concur.

BARHAM, Justice (dissenting).

I respectfully suggest that the majority, in its concern that public interest requires this court to act with some immediacy upon the matter before us, has committed grave error which will haunt the court and perhaps do great harm to the State, its subdivisions, and its citizens in future litigation.

This suit is an attempt by the Parish of Jefferson to block the Louisiana Department of Correction's purchase of the site

and facilities of the House of the Good Shepherd in Jefferson Parish for use as a juvenile training institution. The trial court held that Act No. 452 of 1970, which authorized the department's purchase and use of the site and facilities, was unconstitutional, and also held two other statutes unconstitutional in certain respects.

The majority of this court has held that the Parish of Jefferson had standing in court to challenge the constitutionality of all three statutes, and has reversed the holding of the trial court by declaring all three statutes constitutional. I respectfully submit that the Parish of Jefferson has no right of action to challenge the constitutionality of legislative acts which do not affect it.

Although a municipal corporation or other political subdivision may in certain instances bring representative actions in behalf of its inhabitants to protect or to establish a common right, this is not such an instance. See Faris v. City of Caruthersville, 349 Mo. 454, 162 S.W.2d 237; Sioux City v. Western Asphalt Paving Corp., 223 Iowa 279, 271 N.W. 624, 109 A.L.R. 608; Washington County Water Co. v. Hagerstown, 116 Md. 497, 82 A. 826, 28 Ann.Cas. 1913C 1022; 28 Ann.Cas. 1913C Annotation 1028. In the absence of statutory provision or contractual right, a political subdivision is without power to maintain an action as the representative of the individual and private interests of its citizens. Mayor, etc.,

of Georgetown v. Alexandria Canal Co. et al., 12 Peters 91, 9 L.Ed. 1012; City of New Haven v. New Haven & D. R. Co., 62 Conn. 252, 25 A. 316, 18 L.R.A. 256; City of St. Louis v. G. H. Wright Contracting Co., 202 Mo. 451, 101 S.W. 6. When citizens have distinct private rights, an adjudication in a proceeding where the citizens are not parties, individually or as members of a class, is not a bar to the private citizens' action, and the adjudication is not res judicata as to them. Griffith v. Vicksburg Waterworks Co., 88 Miss. 371, 40 So. 1011, 8 Ann.Cas. 1130; James v. City of Louisville (Ky.Ct.App.), 40 S.W. 912; Board of Com'rs v. Gwin, 136 Ind. 562, 36 N.E. 237; Price v. Gwin, 144 Ind. 105, 43 N.E. 5; Rork v. Smith, 55 Wis. 67, 12 N.W. 408.

Here the Parish of Jefferson does not sue in a representative capacity, nor may the suit be considered a class action. The Parish of Jefferson sues as a subdivision of the State of Louisiana seeking on its own behalf to have declared unconstitutional acts of the Legislature which do not affect the parish, its rights, its powers, its obligations. Actually, the persons who, as individuals or as members of a class, have a real interest in the suit at hand have not had their day in court, and they most assuredly are entitled to it.

Parishes, municipalities, and other political subdivisions can exercise only those powers delegated to them by the sovereign.

It is wise that these subdivisions should not be empowered to expend public money in litigation on behalf of private interests. And if the individuals in interest are actually a collective minority or even a collective majority of the subdivision's inhabitants, the subdivision still does not possess the requisite power and interest to maintain an action by reason of that fact alone. What is so disturbing in this particular case is that while the parish attempts to strike down legislative enactments, individuals and groups—in fact, a large segment of that parish—have contrary interests, views, and desires, and would seek to uphold the legislation. Two wrongs would result if this action is allowed to be litigated by the Parish of Jefferson or if similar actions are allowed to be litigated by other political subdivisions. First, political subdivisions and the State may collude to bring what men of the law call "brother-in-law suits" in order to defeat the rights of the real parties in interest. Second, a political subdivision may expend the money of all to project, establish, or protect the private interests of only a portion of the population, to the prejudice of the remainder. The concurring opinion of Mr. Justice Tate has cited the following in his discussion of this issue: 74 Harv.L.Rev. 1265; 75 Harv.L. Rev. 255; 17 McQuillin, Municipal Corporations (3d Ed.1968), § 49.57; 64 C.J.S. Municipal Corporations §§ 2186b(2) and 2190. I adopt these authorities, in addition to the ones cited above, as supportive of the very position I state. See also 38 Am.Jur. Municipal Corporations §§ 711, 719, 720.

The majority does not comment upon the right or interest of the plaintiff to bring this action, which is the threshold question, and only the concurring opinion comments upon it. I will respond to two arguments urged in the concurrence. The concurrence's conclusion that the act in question affects Jefferson Parish alone is fallacious, for the selection of a place of detention for the State's juvenile delinquents is of vital interest to every parish and to every citizen of every parish. Moreover, if indeed Jefferson objects to the locating of the detention home there, might not other parishes also object to its being placed within their own boundaries? And is it not possible that other parishes would desire the facility? The location of the detention facility for the juvenile delinquents of the State of Louisiana is a matter which concerns the entire State of Louisiana, and its determination is a legislative function. This determination is of no particular concern to Jefferson Parish unless it would violate some specific statutory authority or grant. The concurrence's contention that we avoid a multiplicity of actions by attempting to declare the acts constitutional is an error, for, as I have indicated, the citizens of Jefferson have not had their day in court, the citizens of Louisiana have not had their day in court, and, as I will note

later, the residents immediately adjacent to the proposed detention home have not had their day in court. The majority has not disposed of the litigation, but has fomented future litigation.

Finally, I reject entirely the majority's discussion of Specification of Error No. 4 as a patently erroneous statement of the law. The citation of Code of Civil Procedure Article 2164 as authority for the judgment of this court in this matter is in total disregard of our Constitution and reflects a complete misunderstanding of the limited purpose for which that article was designed.

This court should never have reached the issue of constitutionality in the case before us. The only justiciable question between the Parish of Jefferson and the Louisiana Department of Corrections is whether the proposed purchase of the House of the Good Shepherd for a juvenile facility is in violation of the parish's zoning ordinance. That question may be determined quickly upon the facts in the case. Although the parish zoning ordinance had established special limitations of use upon the property surrounding this proposed facility, the existing facility had operated as a juvenile correction home before the zoning ordinance came into effect, and was therefore a permitted non-conforming use within the zone. The change from private to public ownership and operation for the same purpose maintains the facility within the per-

mitted non-conforming use. It is for this reason that the Parish of Jefferson should be denied relief under its allegation that its zoning laws would be violated. The constitutionality of the legislative acts is not reached in the resolution of this question.

Moreover, in answer to the majority's consideration of this last issue, the Legislature cannot with abandon and impunity violate valid zoning ordinances. The courts may be required to pronounce in certain cases that the legislative or the executive branch of state government is responsible at law for nuisances. The courts may be required to find that certain acts violative of zoning regulations or even customary use of a neighborhood constitute a damaging or taking of property without just compensation. However, those questions are not here present, but neither is the question of the "supremacy" of the Legislature.

I respectfully dissent.

## ON REHEARING

SUMMERS, Justice.

Plaintiff is the parish of Jefferson and it brings this action to enjoin the Louisiana Department of Corrections from purchasing certain property within its borders and establishing on that site a branch of the Louisiana Training Institute for juveniles. The trial judge granted the injunction prayed for, declaring unconstitutional the legislation authorizing the purchase of

the site and establishment and operation of the training institute. The constitutionality of these acts, Acts 353 and 452 of 1970 and Act 192 of 1968, is before us on this appeal. In addition, and alternatively, if the assailed acts are constitutional, the parish of Jefferson is contesting the right of the Department to locate and operate the training institute in the designated location, alleging that to do so will violate the parish zoning ordinance.

### Act 192 of 1968

Acting under authority of Article III, Section 32, of the Constitution, authorizing merger and consolidation of executive and administrative offices whose duties are of a similar character, the legislature enacted Act 192 of 1968 creating the Louisiana Department of Corrections. The Louisiana Board of Institutions and the Department of Institutions were merged and consolidated into the Louisiana Department of Corrections. A Board of Corrections was established by this act charged with determining the department's policies, and a Director of Corrections was created as the department's chief executive officer. In fixing the authority of the director the act set forth: "The director shall also have the authority, with the approval of the Board of Corrections and the Governor, to buy lands needed for the proper use of any institution under the jurisdiction of the department * * *."

The parish of Jefferson contends that Act 192 of 1968 is unconstitutional insofar as the quoted clause authorizing the director to buy land is concerned. The theory of this position is that the title of the act gives no indication that the act authorizes the director to purchase land for the department; hence, in that respect, the act contravenes Article III, Section 16, of the Constitution, the title-body clause requiring every statute to have a title indicative of its object. In reply the department submits that the language of the title is indicative of its object for, after referring to the creation of the department, its board, director, personnel and prescribing functions, duties, etc., the title states, " * * * to provide with respect to lands under the control of the department * * *."

Where acts of the legislature are under attack, courts should, in keeping with the general policy we have often expressed, seek to effectuate the legislative intent and resolve any doubt in favor of constitutionality. To this end a liberal construction has been applied to the title-body clause of the constitution. It is only where the variance in the provisions of the act is palpable and totally irreconcilable with its title, or where both title and body express two distinct subjects, that the intention of the legislature will be held to be in conflict with the constitution. Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49 (1942). It is not the purpose of the title-

body clause of the constitution to require that the title be an index to the contents of the act. It is sufficient that the title of the act express its object in general terms. All things proper and necessary to carry out the general object stated in the title are deemed to be within the scope of the title. Southern Hide Co. v. Best, 176 La. 347, 145 So. 682 (1933).

■ Under these principles we find that the language of the title which expresses the legislative intention to "provide" in the act "with respect to lands under the control of the department" defines the scope of the act in general terms. The quoted language unmistakably indicates that the department will have land under its control and that the act will make provisions for the department's authority "with respect" to those lands. Within this scope it is proper for the legislature to authorize the director "to buy lands needed for the proper use of any institution under the jurisdiction of the department." Likewise, it is properly within the scope of the title for the act to authorize, as it does, the director to lease, grant rights of way across state-owned lands under its jurisdiction and also to sell or transfer to any other state agency real property of the State under the jurisdiction of the department. These are at least the common and ordinary acts of control to be expected of such a department having lands under its "control".

Control is a broad term denoting the exercise of the rights of ownership. All of this authority is, therefore, properly cognizable under the broad and general language of the title: "to provide with respect to lands under the control of the department." Thus the title "indicates" the object of the act as the constitution requires. Act 192 of 1968 is, therefore, constitutional.

### Act 353 of 1970

Later, during the same session of the legislature, Act 246 of 1968 was enacted and approved July 20, 1968, twelve days after Act 192. Among other things, Act 246 authorized the Department "to create, establish, operate and maintain a juvenile correctional institution in the greater New Orleans area."

Thereafter, in its 1970 Regular Session, the legislature enacted Act 353 pertaining to juvenile institutions, repealing at the same time the provisions of Act 246 of 1968 authorizing the creation of a juvenile correctional institution in the Greater New Orleans Area. Act 353 of 1970 also directed that "The department of corrections shall establish, operate and maintain the Louisiana Training Institute for juveniles, with the following branches: * * * (4) The Louisiana Training Institute to be located in the greater New Orleans area." This act became law on July 20, 1970. Another bill enacted in this same session became ef-

fective on the same day. This was Act 452 of 1970 authorizing the department:

> * * * to purchase the site and facilities known as the House of the Good Shepherd, containing approximately thirty acres of land on the right descending bank of the Mississippi River, located on the river road near "Bridge City" in the Parish of Jefferson, State of Louisiana; and *to establish on said site the juvenile correctional institution authorized by the provisions of Act No. 246 of 1968.* (Emphasis added.)

The parish contends that Act 353 of 1970 is also unconstitutional for the same reasons advanced in their argument that Act 192 of 1968 was unconstitutional—that is, the title is not indicative of the object of the act. Article III, Section 16, is again relied upon to support this position. Specifically, it is asserted that Act 353 of 1970 directs that the department "shall establish, operate and maintain the Louisiana Training Institute for juveniles, with the following branches: * * * (4) The Louisiana Training Institute, to be located in the greater New Orleans area." No indication appears in the title of the act, the parish contends, that a training institution will be created or established "in the greater New Orleans area." And, it is observed, there is no language in the Act's title indicating that the act authorizes the establishment of any juvenile training facility at any locality. The title does refer to the establishment of a juvenile reception and diagnostic center, and the body of the act provides for its establishment and location in Baton Rouge. The title of the act also refers to the assignment by the department of juvenile offenders "to the several juvenile institutions operated by the said department." But there is not the slightest indication that the act authorizes the establishment or operation of juvenile training institutions, in specific localities or otherwise. To the contrary, this important provision of the act is concealed from anyone reading the title. A reading of the title, therefore, gives no indication that *additional* training facilities for juveniles would be established, and, more importantly, the title gives no indication that facilities will be established in the Greater New Orleans Area.

Notwithstanding the attitude this Court has taken in applying Article III, Section 16, of the Constitution to acts of the legislature, to effectuate rather than defeat their validity, the Court may not disregard the constitutional mandate and render this constitutional safeguard nugatory. To accede to the department's contention here would have that effect.

██ Hence it is necessary to conclude that, insofar as this act purports to authorize the establishment, operation or maintenance of the Louisiana Training Institute for juveniles in the Greater New Orleans Area, the act is unconstitutional. This

finding, however, does not impair the validity of the act otherwise. Section 2, Act 353 of 1970; Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223 (1949). In other respects the act deals generally with the creation of a diagnostic center, commitment and assignment of juveniles by the department to juvenile institutions under its supervision, etc. Insofar as the title indicates these provisions, the act is constitutional.

. . .

### Act 452 of 1970

Act 452 of 1970 authorizes the department to purchase the site and facilities known as the House of the Good Shepherd in the parish of Jefferson; and to *establish on said site the juvenile correctional institution authorized by the provisions of Act No. 246 of 1968.*

. . . . .

Section 891 of Act 246 of 1968 authorized the department to create, establish and maintain a juvenile correctional institution in the Greater New Orleans Area for children under seventeen years of age adjudged delinquent or neglected by the courts.

Acts 353 and 452 of 1970 were enacted in the same session and became effective on the same day. In addition to its other provisions, Act 353 repealed Section 891 of Act 246 of 1968, authorizing the establishment of a juvenile correctional institution in the Greater New Orleans Area.

Thus, the parish contends, when Act 452 of 1970 authorized the purchase of the House of the Good Shepherd and the establishment of a juvenile correctional institution on that site "authorized by the provisions of Act 246 of 1968," the establishment of the correctional institution referred to in Act 452 of 1970 was conditioned upon the authority contained in Act 246 of 1968. Therefore, the argument goes, when the authorization in Act 246 was repealed by Act 353, the condition upon which Act 452 of 1970 was predicated failed—it ceased to exist—and the mandate of Act 452 could not be executed.

The question, then, is whether the establishment of the juvenile correctional institution referred to in Act 452 of 1970 is dependent upon the continuing life of Act 246 of 1968.

Since Act 452 of 1970 authorizes the purchase of the House of the Good Shepherd, and because the act contains its independent authorization, direction and mandate to establish a juvenile correctional institution on that site, we hold that the reference to Act 246 of 1968 is merely a reference in aid of the legislative intention that such an institution be established in the Greater New Orleans Area. In effect, it amounts to an incorporation by reference. The clause "authorized by the provisions of Act 246 of 1968" does not require that the authorization contained

in that act continue in existence in order for Act 452 of 1970 to be effective.

This result is indicated by the fact that Acts 353 and 452 of 1970 were enacted simultaneously. It would be attributing an exercise in futility to the legislature to hold that it authorized the purchase of the House of the Good Shepherd in Act 452 and simultaneously by Act 353 repealed Act 246 of 1968 upon which Act 452 was predicated. In holding that the reference to Act 246 of 1968 is merely in aid of the legislature's intention to describe the type facility to be established under the authority of Act 452 of 1970 and that the continuing life of Act 246 of 1968 is unnecessary to give effect to Act 452 of 1970, we read these acts as laws in *pari materia*, giving to each the sense that results from the whole. La. Civil Code art. 17. From the whole it is inescapable that the legislature intended to establish a juvenile training facility in the Greater New Orleans Area, and our decision effectuates this purpose.

It is unnecessary to consider the parish contention that the term "Greater New Orleans Area" as used in Act 246 of 1968 and in Act 353 of 1970 is too vague and indefinite. No reliance can or need be placed by the department on this language of the Acts. Act 452 of 1970 contains its independent, specific designation of the location for the juvenile training school —the House of the Good Shepherd prop-

erty on the west bank of the Mississippi River. No further designation is necessary, if more were needed, to definitely establish the location of the proposed training school.

In our review of the attack upon the constitutionality of these acts, we conclude that Act 452 of 1970 properly authorizes the department to purchase the House of the Good Shepherd and to establish a training facility thereon such as that referred to in Section 891 of Act 246 of 1968—the facility to be administered according to the authorizations and limitations contained in Act 353 of 1970. Moreover, the general authority delegated to the department by Act 192 of 1968 would also authorize purchase by the department of sites for juvenile training or correctional institutions, so long as the property acquired were put to an authorized use, the difference being that Act 192 contains no legislative mandate requiring the purchase of property or designating the specific locations.

*Zoning*

The trial court found these acts to be unconstitutional and did not consider it necessary to adjudicate the zoning question. However, since we find the acts validly authorize the purchase of the House of the Good Shepherd and the establishment of a correctional institution there for juveniles, it becomes necessary

to resolve the contention that the proposed juvenile correctional institution will violate the zoning ordinance in force in Jefferson Parish.

Power has been granted to the parish of Jefferson by Section 29 of Article XIV of the Constitution to "zone its territory; to create residential, commercial and industrial districts, and to prohibit the establishment of places of business in residential districts." Acting pursuant to this authority, the parish enacted a Comprehensive Zoning Ordinance in 1958 wherein the area surrounding the House of the Good Shepherd was zoned "R–1", a single-family residential district. By this classification the property surrounding the House of the Good Shepherd and on which it was located was subject to a use restriction permitting institutions *"except correctional institutions or mental hospitals."* Though the zoning classification was changed to R–3 providing for less restrictive use requirements in 1959, and then to R–2, re-imposing other use restrictions, each classification permitted institutions "except correctional institutions or mental hospitals."

The parish asserts that the House of the Good Shepherd is a religious institution and its establishment and operation have not been in violation of the zoning ordinances. On the other hand, the State contends that the House of the Good Shepherd is, and has been, a correctional in-

stitution since its establishment in 1961, operating since that time in violation of the parish zoning ordinance, and the property involved in the violation enjoys the same legal status enjoyed by property with uses made nonconforming by the adoption of zoning restrictions.

Since its establishment as a Catholic institution by the Sisters of the Good Shepherd, the House of the Good Shepherd has been conducted as a correctional school for girls in junior high and high school age groups. In addition to the school program, a counseling and psychiatric treatment service is provided. It is a special type of institution existing to accommodate, and give service to rehabilitate, problem girls, most of whom have been adjudged delinquent or neglected children. When the Sisters determine that a student does not respond to their program of rehabilitation, the child is returned to the court for reassignment to other custodians. Though the institution is owned by Catholic religious organizations, the girls are placed by the court commitment without regard to religion.

In the beginning, the House of the Good Shepherd was built and designed to accommodate 100 girls, but, due to the more rigid standards to which they were subsequently required to adhere and the shortage of funds, it has been necessary for the Sisters to reduce the number of students to 32.

The school is supported, in part, by Catholic Charities; a per diem is paid by Jefferson and Orleans Parish for each girl sent there; contributions are received from the United Fund, a fund-raising organization supporting charitable and other causes; and, since 1966, funds are provided by the State.

As related by Louis M. Sowers, Director of the Department of Corrections, if the department should acquire the property, the premises now occupied by the House of the Good Shepherd will be populated by boys in the 12 to 15 year age group who have been determined by a court to be proper subjects for commitment to a training school on account of delinquence or other reasons. Students would be assigned on the basis of prior diagnosis made at the department's Reception and Diagnostic Clinic in Baton Rouge. A junior high school would be conducted by the department with primary emphasis on academic type training rather than vocational.

Sowers testified there was little difference in the manner of conducting a girls or boys training school, except in the vocational training courses offered. The basic academic offerings are essentially the same. Having visited the House of the Good Shepherd, he was of the opinion the school was being operated in much the same way the department operates its training schools.

Although he was unable to state that the anticipated use of this property would be changed in the future, he stated, " * * * the need for a school in the Greater New Orleans Area is so desperate that I cannot visualize that there would ever be a change in the school." He was further of the opinion that the State and Federal funds allocated to the establishment of the school required it to be used for a juvenile training school only.

These facts support a conclusion that the House of the Good Shepherd has operated since 1961 as a correctional institution for girls in junior high and high school age groups. We also find that the use proposed by the department will conform with this use. This use has been contrary to the terms of the ordinance prohibiting correctional institutions in that zone. And, since this violation has continued for more than two years, the property, its buildings and appurtenances have acquired a nonconforming use. La. R.S. 9:5625. Thus no action may be brought by the parish to require enforcement of the zoning restriction against the House of the Good Shepherd or the Department of Corrections should it acquire the property and continue its use in keeping with the nonconforming use established by the House of the Good Shepherd. We are supported in these conclusions by the authority of Section 5625 of Title 9 of the Revised Statutes.

This result makes it unnecessary for the Court to decide whether the State may, through the action of one of its departments, violate the zoning ordinance enacted by the parish of Jefferson under the authority of Article XIV, Section 29, of the Constitution.

### Right of Action

We have considered and adjudicated each of the issues presented by the pleadings and briefs, because all parties have urged us to do so, and for the further reason that the statutes have been declared unconstitutional by the trial court. Once this has occurred the aggrieved party has a constitutional right to an appeal directly to this Court on that question— whether the statutes are constitutional or not. (La.Const. art. 7 § 10[1]). The statutes are, moreover, essential links in the chain of authority conferring upon the department the right to establish the correctional institution the parish seeks to enjoin. However, the question of the parish's right to contest the constitutionality of these acts has been raised in this Court. At the same time, no doubt exists that the parish has a right to seek injunctions for violations of its zoning ordinances. Cf. La. R.S. 33:4728; 3 Rathkopf, Law of Zoning and Planning, § 66–1 (3d ed. 1971).

■ On this rehearing we adhere to the view that the parish of Jefferson has standing in court to challenge the constitutionality of those statutes.

Any questioning of the right of the parish to contest the constitutionality of these statutes must be based upon the rule announced in Article 681 of the Code of Civil Procedure that "Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts." The question may be raised by the Court on its own motion. La.Code Civ.P. art. 927(5).

■ The suit before us is a suit by the parish of Jefferson, not a class action. The parish sues to assert its right. That right is a right to enjoin the violation of its zoning ordinance. The action which will constitute the zoning ordinance violation is authorized by, and based upon, statutes which will permit the department to buy the property and establish the institution. If legislative enactments authorize actions which would result in violations of its ordinances, the parish may properly question the constitutionality of those statutes in aid of its undoubted right to enjoin violations of its zoning ordinances. In essence this means that the parish may question the *right* of the department to violate its zoning ordinance just as it may enjoin the violation itself.

There is little difference between this result and the cases which accord a local government entity the right to bring suit

to enjoin as unconstitutional the enforcement of a statute changing its form of government. Mr. Chief Justice O'Niell stated the principle which is controlling here:

> It would be an absurdity to hold that a corporation created by the Legislature, with authority to prosecute and defend suits in the courts, cannot invoke the protection afforded by the Constitution to prevent a violation of the rights granted to it. (City of Gretna v. Bailey, 141 La. 625, 75 So. 491 [1917]).

See also State ex rel. Tulare Homestead Ass'n v. Montgomery, 185 La. 777, 171 So. 28 (1936); State ex rel. Board of School Directors v. City of New Orleans, 42 La. Ann. 92, 7 So. 674 (1890).

For the reasons here assigned the former decree is reinstated as the final judgment of this Court.

SANDERS, J., takes no part.

DIXON, Justice (dissenting).

I respectfully dissent.

I do not understand that R.S. 33:4727 gives the parish or the police jury the right to bring an action to enjoin the prospective violation of the zoning ordinance. Nothing anywhere gives the police jury the power to act as ombudsman for some of its citizens and attack the validity of legislative acts in general.

BARHAM, Justice (dissenting).

This suit is an attempt by the Parish of Jefferson to block the Louisiana Department of Correction's purchase of the site and facilities of the House of the Good Shepherd in Jefferson Parish for use as a juvenile training institution. The trial court held that Act No. 452 of 1970, which authorized the department's purchase and use of the site and facilities, was unconstitutional, and also held two other statutes unconstitutional in certain respects.

The majority of this court on original hearing and on rehearing has reversed the trial court by declaring all three acts constitutional in whole or in part. Act No. 192 of 1968 (R.S. 15:821–839); Act No. 353 of 1970 (R.S. 15:901–907); Act No. 452 of 1970. The majority has determined: "The parish sues to assert its right. That right is a right to enjoin the violation of its zoning ordinance." The majority has correctly decided the only issue for our determination—that is, whether the defendant's use of the property as a juvenile training facility would entail a violation of the parish's zoning ordinances. It has held that the purchase under color of any statute would not result in a zoning violation since the proposed use of the property would be a continuation of a previous nonconforming use. This is the threshold question. It puts to rest on non-constitutional grounds the only justiciable issue raised by the Parish of Jefferson, and

therefore a consideration of the constitutionality of the statutes should have been pretermitted.

It is a universally accepted principle of law that courts will not pass on the constitutionality of an act of the Legislature if the merits of the issue presented may be determined and disposed of on other grounds. Courts do not have the power to question, review, and pass judgment on the constitutionality of legislative enactments except when a decision on the constitutionality of statutes is *necessary* to determine a justiciable controversy.

" * * * It is a matter of common occurrence—indeed, it is almost the undeviating rule of the courts, both state and federal—not to decide constitutional questions until the necessity for such decision arises in the record before the court. This court has followed that practice from the foundation of the government * * *." Baker v. Grice, 169 U.S. 284, 18 S.Ct. 323, 42 L.Ed. 748; Arkansas F. Oil Co. v. Louisiana ex rel. Muslow, 304 U.S. 197, 58 S.Ct. 832, 82 L.Ed. 1287.

"This Court has said repeatedly that it ought not pass on the constitutionality of an act of Congress unless such adjudication is unavoidable. This is true even though the question is properly presented by the record. If two questions are raised, one of non-constitutional and the other of constitutional nature, and a decision of the non-constitutional question would make unnecessary a decision of the constitutional question, the former will be decided. * * *" Alma Motor Co. v. Timken-Detroit Axle Co., 329 U.S. 129, 67 S.Ct. 231, 91 L.Ed. 128. See also Charles River Bridge v. Proprietors of Warren Bridge, 11 Pet. 420, 9 L.Ed. 773; Peters v. Hobby, 349 U.S. 331, 75 S.Ct. 790, 99 L.Ed. 1129.

" * * * This non-constitutional issue must be met at the outset, because the case must be decided on a non-constitutional issue, if the record calls for it, without reaching constitutional problems. * * *" Communist Party of U. S. A. v. Subversive A. C. Bd., 351 U.S. 115, 76 S.Ct. 663, 100 L.Ed. 1003. See also 16 Am.Jur.2d Constitutional Law §§ 111, 113; 16 C.J.S. Constitutional Law §§ 92, 94, and the numerous cases cited in footnotes 56 and 57, pp. 317–321.

Like the United States Supreme Court, our Louisiana courts have followed this rule of restraint from earliest times. Ranger v. New Orleans and New Orleans, etc., Co., Man.Unr.Cas. 176; Parish of St. Landry v. Stout, 32 La.Ann. 1278; State v. Coulon, 197 La. 1058, 3 So.2d 241; Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755; Aucoin v. Dunn, 255 La. 823, 233 So.2d 530.

The constitutional issues presented here are not germane to a determination of the zoning rights of Jefferson Parish. They

are side issues which become moot upon a determination of the non-constitutional question.

On original hearing the majority of this court failed to note and pass upon whether the Parish of Jefferson had a right of action to question the constitutionality of the statutes. See the concurring opinion of Mr. Justice Tate and my dissenting opinion. I noted in that dissent this court's apparent feeling of urgency to adjudicate the constitutionality of these statutes. The majority persists in its attempt to reach that issue.

Since we can and must dispose of the only complaint of the plaintiff on a non-constitutional ground and since we are mandated to then desist from passing upon the constitutional questions, the remainder of the opinion is dicta.

The majority in a final attempt to justify its reaching the constitutional questions has stated that since the trial court declared the statutes unconstitutional, we must pass upon their constitutionality. This is totally without merit. The right of appeal from a decision declaring a law unconstitutional does not dictate that we must reach the constitutional issue. If this court decides the case before it on the proper ground and dismisses plaintiff's action, the trial court's judgment is of no effect, and its decision of unconstitutionality falls just as effectively as if this court should say that the statutes are constitutional.

I could concur in the decree of dismissal, but since that decree is based in part on a judgment on the constitutionality of the statutes, I must dissent for the reasons assigned in my dissent on original hearing and those here expressed.